11 A.3d 875 (2011)
418 N.J. Super. 18
Judith BARR, Plaintiff-Respondent,
v.
Thomas BARR, Defendant-Appellant.
No. A-1389-09T2.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 2010.
Decided January 19, 2011.
*880 Jennifer Weisberg Millner argued the cause for appellant (Fox Rothschild, LLP, attorneys; Ms. Millner, of counsel and on briefs; Eliana T. Baer, Lawrenceville, and Robert A. Epstein, Roseland, on the briefs).
Mark R. Silber argued the cause for respondent (Mr. Silber, attorney; David E. Alberts, on the brief).
Before Judges AXELRAD,[1] R.B. COLEMAN and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
In this post-judgment matrimonial matter, defendant Thomas Barr appeals from a February 20, 2009 Family Part order confirming plaintiff's percentage interest in his military pension and the denial of his motion for reconsideration filed October 6, 2009. Defendant argues the equitable distribution provisions of the parties' property settlement agreement (PSA) incorporated into their final judgment of divorce limited plaintiff's interest in his pension to a percentage of its value earned during the marriage and there was no intention to distribute increases resulting from his post-judgment, pre-retirement promotion. Defendant additionally challenges portions of the order establishing the tax impact attributable to plaintiff's share of the asset and her award of counsel fees and costs.
The trial court, persuaded by In re Marriage of Hunt, 909 P.2d 525 (Colo.1995), concluded plaintiff had an equitable interest in all post-dissolution pension increases resulting from defendant's promotion. Following our review of the arguments raised on appeal, we reverse.

I.
The parties were married on August 3, 1968, and divorced by entry of a final judgment dated August 31, 1987. The parties settled all collateral issues by executing a PSA, entered into on April 20, 1987. That PSA was incorporated into the final judgment of divorce.
At the time of separation, defendant had completed eleven years of active duty in the Air Force, achieving the rank of Captain. Although defendant had not yet qualified to receive a pension from the military, paragraph 6C of the PSA entitled "Personal Property," provided: "The Wife will receive 50% of Husband's pension benefits attributable to his 11 years in the military service only. Such benefits are to *881 be distributed when Husband commences receiving same."
Following the divorce, defendant joined the Air Force Reserves. In April 2006, he retired after reaching the rank of Major. At that point, defendant's total combined years of active duty and reservist military service qualified him to receive retirement benefits.
Upon retirement, in compliance with the PSA, defendant consulted with plaintiff and they agreed she would receive forty-two percent of his monthly benefit. The parties also arranged for plaintiff to return to defendant fifteen percent of each payment to satisfy the income taxes attributable to the monies paid to her. Plaintiff's share increased with each cost of living adjustment defendant was granted, in September 2006, February 2007 and again in February 2008.
In 2007, defendant suggested the Defense Finance and Accounting Service (DFAS) could directly disburse plaintiff's share of his pension. In this way, plaintiff could avoid returning the sums for taxes, as she would directly receive the money and declare the income on her individual income tax returns. DFAS rejected plaintiff's submission because she failed to submit a court order certified within ninety days of service upon DFAS. Additionally, DFAS needed the parties' certifications stating the percentage of defendant's retired pay agreed to be paid to plaintiff each month. When plaintiff asked defendant to certify she was entitled to forty-two percent of his disposable retirement pay, he declined. In March 2008, defendant ceased making monthly payments to plaintiff, with the exception of $1,000 remitted in July 2008.
On January 9, 2009, plaintiff moved for enforcement of litigant's rights. She sought defendant's immediate compliance with the PSA, requesting he be ordered to disburse forty-two percent of his monthly benefit to her, pay forty-two percent of all past monthly payments, and satisfy her counsel fees and costs incurred in presenting her motion.
Defendant responded. He admitted the PSA gave plaintiff an interest in his monthly retirement benefit, but disputed she was entitled to receive forty-two percent. Defendant argued plaintiff's interest must be calculated without consideration of the increased benefit directly attributable to his post-dissolution promotion.
Finding the terms of the PSA limited plaintiff's share in the asset only by "the years of defendant's service at the time of divorce," the court rejected defendant's argument that plaintiff's percentage interest was also limited to "the wage level earned during the marriage." Further, the court found defendant's conduct of calculating and paying plaintiff forty-two percent for two years evinced the parties' intent of the amount of her interest. The Family Part judge granted plaintiff's motion and ordered she receive "42% of [d]efendant's military service pension going forward." In a separate order, the court required defendant to satisfy the accumulated arrears.
Defendant's motion for reconsideration was granted in part. The court reduced the amount of the accumulated arrearages by the taxes due on sums paid to plaintiff. Otherwise, defendant's request to reduce the percentage of plaintiff's interest in his retirement benefits was denied. Finally, the court awarded plaintiff counsel fees and costs.
On appeal, defendant argues the court erred in its interpretation of the PSA. Related to this issue, defendant asserts the order grants plaintiff a greater share of his pension than she is entitled to receive as a matter of law, because it awarded her *882 accretions attributable solely to his post-divorce work efforts. Defendant also cites as error the manner in which the motion judge fixed the tax offset and the award of counsel fees and costs.

II.
It is well established that matrimonial agreements are basically contractual in nature. Pacifico v. Pacifico, 190 N.J. 258, 265, 920 A.2d 73 (2007). Although we are obliged to defer to the factual findings and discretionary decisions made by the Family Part due to the specialized nature of the court, Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998), a question regarding the interpretation or construction of a contract is a legal one and our review is plenary, with no special deference to the trial judge's interpretation of the law and the legal consequences that flow from the established facts. Zabilowicz v. Kelsey, 200 N.J. 507, 512-13, 984 A.2d 872 (2009); Manalapan Realty L.P. v. Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
In interpreting a contract we are guided by established principles. "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." Hardy ex. rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103, 965 A.2d 1165 (2009). "We do not supply terms to contracts that are plain and unambiguous, nor do we make a better contract for either of the parties than the one which the parties themselves have created." Maglies v. Estate of Guy, 193 N.J. 108, 143, 936 A.2d 414 (2007); Graziano v. Grant, 326 N.J.Super. 328, 342, 741 A.2d 156 (App.Div.1999).
So too, we enforce the contract as written. Pacifico, supra, 190 N.J. at 266, 920 A.2d 73 (internal citations omitted). The parties are bound by the contracts they make for themselves, with the understanding that "a meeting of the minds is an essential element to the valid consummation" of any agreement. Center 48 Ltd. P'ship v. May Dept. Stores Co., 355 N.J.Super. 390, 406, 810 A.2d 610 (App. Div.2002). Accordingly, in interpreting an agreement, we "must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex County Imp. Authority, 404 N.J.Super. 514, 528, 962 A.2d 591 (App.Div.2009) (citing Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 183-84, 425 A.2d 1057 (1981)).
In our examination, if we find "the terms . . . are clear and unambiguous, there is no room for construction and the court must enforce those terms as written," Watson v. City of E. Orange, 175 N.J. 442, 447, 815 A.2d 956 (2003), giving them "their plain, ordinary meaning." Pizzullo v. New Jersey Mfrs. Ins. Co., 196 N.J. 251, 270, 952 A.2d 1077 (2008). See also Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595, 775 A.2d 1262 (2001). However, "[i]f the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists. In that case, a court may look to extrinsic evidence as an aid to interpretation." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238, 948 A.2d 1285 (2008) (internal citations omitted).
Our review of the questions presented on appeal is also informed by the legal principles governing the equitable distribution of marital assets. We set forth these general guideposts, along with the specific provisions governing the equitable distribution of pension assets.
Prior to ordering the division of an asset, the court must identify whether the asset is subject to equitable distribution. *883 Rothman v. Rothman, 65 N.J. 219, 232, 320 A.2d 496 (1974). In general, the court divides only that portion of the asset that was "legally or beneficially acquired" during a marriage. N.J.S.A. 2A:34-23(h). It is well-settled that a pension earned during the marriage is an asset subject to division. Kikkert v. Kikkert, 88 N.J. 4, 5, 438 A.2d 317 (1981). Accordingly, pension benefits are subject to equitable distribution insofar as the employee spouse earns the right to receive such benefits through work performed during the marriage. Genovese v. Genovese, 392 N.J.Super. 215, 223, 920 A.2d 660 (App.Div.2007).
The equitable distribution of a pension interest acquired during the marriage is grounded on the principle that "a pension plan [is] a form of deferred compensation for services rendered." Whitfield v. Whitfield, 222 N.J.Super. 36, 45, 535 A.2d 986 (App.Div.1987). Rather than receiving current income, the monies are deferred until retirement. "The marital portion of a pension is identified from the `perspective of when and how the pension was earned or acquired.'" Sternesky v. Salcie-Sternesky, 396 N.J.Super. 290, 298, 933 A.2d 956 (App.Div.2007) (quoting Whitfield, supra, 222 N.J.Super. at 44, 535 A.2d 986). Therefore, pension benefits provided to one party during the marriage are considered to be derived from the "joint efforts of the parties" and "are subject to equitable distribution." Moore v. Moore, 114 N.J. 147, 154-55, 553 A.2d 20 (1989).
Moreover, the right to receive an equitable share of a pension asset is not dependent on whether an employee's right to benefits has matured upon the filing of a complaint for divorce. Moore, supra, 114 N.J. at 156-57, 553 A.2d 20; Sternesky, supra, 396 N.J.Super. at 298, 933 A.2d 956. That fact will not extinguish the non-pensioner's interest in the portion of that asset earned during the marriage. Moore, supra, 114 N.J. at 154-55, 553 A.2d 20. In this regard, military pension benefits, where the requisite years of military service have not been completed at the time of divorce, are not exempt and they too are subject to equitable distribution. Kruger v. Kruger, 73 N.J. 464, 467-71, 375 A.2d 659 (1977); Whitfield, supra, 222 N.J.Super. at 39, 535 A.2d 986.
We note the parties' PSA opted to provide plaintiff's equitable pension interest as a future distribution, categorized as a "deferred distribution" as opposed to a "direct offset" of the pension's value at the time of divorce. When a pension interest is directly offset, "the pension benefit is valued as of the date of retirement" then discounted to present value. Menake v. Menake, 348 N.J.Super. 442, 448, 792 A.2d 448 (App.Div.2002). The non-employee spouse offsets a percentage of that discounted value against the value of other marital assets. On the other hand, using the deferred-distribution method provides the non-employee spouse with a percentage of the benefits earned during the marriage, calculated pursuant to a formula, the amount of which cannot be computed until the employee-spouse retires.[2]Claffey v. Claffey, 360 N.J.Super. 240, 255, 822 A.2d 630 (App.Div.2003).
Generally, when using the deferred-distribution method, the calculation *884 of a non-employee's interest earned during the marriage employs a "coverture fraction." "The coverture fraction represents the number of years during coverture that the pensioner spouse was a member of the pension plan, divided by the total number of years that the pensioner spouse was a member of that pension plan." Claffey, supra, 360 N.J.Super. at 256, 822 A.2d 630. See also Moore, supra, 114 N.J. at 166, 553 A.2d 20. The benefit paid to the nonemployee spouse is the designated percentage awarded of the product of the coverture fraction times the total retirement benefit. This result limits a nonemployee spouse's share by the term of the marriage even though the benefit is received upon the employee-spouse's date of retirement.
Even though applying the fraction to the value of the pension at the time of retirement "necessarily reflect[s], to some degree, [a distribution of] post-divorce work efforts[,]" Menake, supra, 348 N.J.Super. at 454, 792 A.2d 448, we have repeatedly concluded that the use of the coverture fraction methodology manifests a fair division of the future benefits between the former spouses. See Risoldi v. Risoldi, 320 N.J.Super. 524, 540, 727 A.2d 1038 (App.Div.), certif. denied, 161 N.J. 335, 736 A.2d 528 (1999); Marx v. Marx, 265 N.J.Super. 418, 425-26, 627 A.2d 691 (Ch.1993). In most instances, use of the coverture fraction is not at odds with a court's exercise of equitable authority to effectuate asset division because the use of the "coverture fraction insures that the equitable distribution pot includes only that portion of the working spouse's labor which constitutes a `shared enterprise.'" Eisenhardt v. Eisenhardt, 325 N.J.Super. 576, 581, 740 A.2d 164 (App.Div.1999). "The longer the employee spouse works, the larger the denominator [of the coverture fraction], thus reducing the non-employee spouse's percentage share and assuring the employee spouse the benefits of his or her post-divorce labors." Reinbold v. Reinbold, 311 N.J.Super. 460, 466-67, 710 A.2d 556 (App.Div.1998).[3]
Defendant's military retirement benefit is not paid pursuant to a plan, but based on a formula set forth in federal statutes. We briefly review the nature of and methodology used to compute military pensions, which is somewhat unique. McCarty v. McCarty, 453 U.S. 210, 221, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589, 599 (1981).
First, unlike most pensions, the plan is non-contributorythe service member makes no contribution toward his or her pension. Second, a service member's pension rights are not vested until the requisite years of service are reached, noting that a retired officer at all times remains a member of the military, subject to recall to active duty. Id. at 222, 101 S.Ct. at 2736, 69 L.Ed.2d at 599 (internal citations omitted). See also 10 U.S.C.A. § 802(4). Third, the formula used to calculate retired pay benefits considers a military member's rank pay at retirement and years of service. 10 U.S.C.A. § 12739(a). Specifically, each service member receives points for each day of military service: one point for each day of active military service and two points for each day of reservist duty. 10 U.S.C.A. § 12732(a)(2)(A)(i) and (ii). Additional points accrue based on the completion of certain training, drills *885 and funeral honors duty. The actual member's benefit is the product of the base pay for the rank achieved at retirement and two-and-one-half percent of the points representing the years of service credited, and may not exceed seventy-five percent of the base pay upon which it is based. 10 U.S.C.A. § 12739(a) and (c).
Keeping all of these principles in mind, we turn our examination to defendant's challenges on appeal. Defendant argues the motion judge erred in: interpreting the PSA terms; determining plaintiff's interest in the pension asset was forty-two percent; calculating the tax offset at twenty-percent and awarding counsel fees and costs.

III.

A.
We first review the PSA to discern whether its terms unambiguously resolve this dispute. As noted, the terse provisions of the parties' agreement afforded plaintiff a fifty-percent interest in defendant's pension benefits "attributable to his 11 years in the military service only." It included no specificity as to the applicable formula to calculate or the vehicle used to deliver plaintiff's interest.
Defendant urges the PSA's inclusion of the word "only" following "military service" limited plaintiff's interest solely to benefits accruing as a result of his eleven years of active military duty, reaching the rank of Captain. He argues his post-marital transition to the reserves provides a clear demarcation of points earned for service before and after the marriage, and that only as a reservist did he attain the rank of Major, easily differentiating the marital and post-marital benefits related to that rank. Defendant also suggests that the initial error in calculating the amount due plaintiff should not impact the correct legal result.
Plaintiff responds, arguing the language at issue unequivocally grants her half of the total pension benefit limited only by the length of the marriage. She asserts this interpretation is buttressed by defendant's post-retirement conduct calculating her interest that very way.
We disagree with the determination of the trial court that the PSA language is unambiguous, and determine the language is subject to "two reasonable alternative interpretations," Chubb Custom Ins., supra, 195 N.J. at 238, 948 A.2d 1285, as evidenced by the parties' two positions. The modifier "only" limiting plaintiff's interest "attributable to his 11 years in the military service"reasonably could mean only that portion of the asset defined by the time of the marriage, eleven years, or only that interest representing defendant's active duty service, also eleven years.
When faced with ambiguity in a contract, the parties may provide "extrinsic evidence as an aid to interpretation." Ibid. "Where a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power." Ibid. (citing Pacifico, supra, 190 N.J. at 268, 920 A.2d 73). The doctrine "may be utilized after a court has examined the terms of the contract, in light of the common usage and custom, and considered the circumstances surrounding its execution." Pacifico, supra, 190 N.J. at 267-68, 920 A.2d 73. The Supreme Court has cautioned however, that application "is only available in situations where the parties have unequal bargaining power. If both parties are equally `worldly-wise' and sophisticated" they presumably were on equal footing obviating *886 application of the doctrine. Id. at 268, 920 A.2d 73 (internal citations omitted).
In Pacifico, supra, 190 N.J. at 268, 920 A.2d 73, the Court found the doctrine inapplicable, concluding the marital settlement process examined in that case entailed negotiations between the parties and their attorneys who drafted and redrafted versions of the PSA. In the instant matter the record is not so clear.
The record suggests defendant was not present at the final divorce hearing. The final judgment included only the appearance of plaintiff's counsel. Also, the PSA contains counsel's signature witnessing plaintiff's signature, but there is no reference to a legal representative or witness for defendant. More important, the PSA states, "[t]he parties agree to pay counsel fees to [plaintiff's counsel] for preparation of the [PSA] as well as the divorce action." From this we conclude plaintiff's counsel drafted the PSA. Unfortunately, the parties offered no information relating the extent of their negotiations, if any, in reaching their agreement on the pension issue.
Unlike the motion judge, we are convinced testimonial evidence may shine further light upon, and aid the court in, the interpretation of the provision under review. For that reason, we reverse and remand for further proceedings, including a plenary hearing as necessary, to discern the intent of the parties when drafting the PSA provision distributing defendant's military pension.
There is another reason to conduct a plenary hearing. The parties are at odds on whether the increase in defendant's pension resulted from separate post-divorce work efforts. Plaintiff echoes the holding in Risoldi, supra, 320 N.J.Super. at 544, 727 A.2d 1038, which stated the use of a "coverture fraction, applied at the time [pension] benefits convert to pay status at retirement, will assure [the employee] maintains the fruits of his post-divorce labor." Defendant argues the mandate circumscribing equitable distribution only to marital assets cuts short the court's reach to divide property acquired before or after the marriage. See Moore, supra, 114 N.J. at 166, 553 A.2d 20 (advising that any "[p]ost-retirement cost-of-living increases attributable to a pension earned after the marriage are not subject to equitable distribution"); Faulkner v. Faulkner, 361 N.J.Super. 158, 165, 824 A.2d 283 (App.Div.) (reciting that "[p]ension increases due to post-judgment efforts of the employed spouse entirely unrelated to the prior service . . . are not subject to [ ] distribution"), certif. denied, 178 N.J. 28, 834 A.2d 402 (2003); Reinbold, supra, 311 N.J.Super. at 469-70, 710 A.2d 556 (holding assets acquired after divorce, through the sole efforts of one spouse, are immune from claims of equitable distribution); Hayden v. Hayden, 284 N.J.Super. 418, 424, 665 A.2d 772 (App.Div.1995) (holding State Trooper's post-divorce pre-retirement efforts recognized by regular cost-of-living increases through collective bargaining are not a distributable portion of his pension).
Few reported New Jersey authorities have discussed the equitable distribution of pre-retirement increases resultant from post-divorce efforts and none have examined the context presented of post-divorce military promotions.
In Whitfield, supra, we rejected a requirement of vesting as a prerequisite to the equitable distribution of defendant's Air Force pension. 222 N.J.Super. at 39, 535 A.2d 986. The defendant had served sixteen of the requisite twenty years of service at the time of divorce. Id. at 40, 535 A.2d 986. We found the military pension was not a mere expectancy, id. at 45, 535 A.2d 986, but marital property subject *887 to equitable distribution, which was "earned during each and every day of [the defendant's] years of employment in the military." Id. at 46, 535 A.2d 986. We concluded "the includability of property in the marital estate does not depend on when, during the marriage, the acquisition took place. It depends solely on the nature of the interest and how it was acquired." Id. at 47, 535 A.2d 986.
In Menake, supra, after considering the employee-spouse's assertion that his pension increase resulted from extraordinary overtime performed following divorce, the trial court was persuaded to modify a QDRO, finding it failed to reflect the terms of the divorce judgment that reserved to him "[a]ny pension benefits earned subsequent to the date of the divorce complaint." 348 N.J.Super. at 447, 792 A.2d 448. We reversed the order entered because the court used a "`hypothetical retirement' as of the date of the divorce complaint." Id. at 452, 792 A.2d 448. On remand we advised the trial court
Thus far, we have considered the "coverture fraction" as sufficient to carve out the marital value of the asset and have not required that the value of the benefits as of the date of retirement be analyzed to determine, and subtract out, any enhancement due to post-divorce work effort. We do not foreclose that possibility in the event, on remand, the parties choose to pursue the issue and establish an appropriate record.
[Id. at 454, 792 A.2d 448.]
On the issue of whether pension increases were solely from post-divorce work efforts, we related the possible questions for review, stating:
Can, for instance, such enhancement be mathematically determined and factored out? Perhaps more importantly, can it be shown that the post-divorce enhancing factors i.e., here, the alleged extraordinary overtime, are entirely unrelated to plaintiff's prior years of service? If, for instance, seniority were a dispositive factor in his ability to obtain the overtime, it would seem that would be future enhancement of the marital efforts for which it could be said both spouses looked forward to. If only partially a factor, can the post-divorce service efforts be mathematically extracted?
[Ibid.]
On the other hand, in Reinbold, supra, we concluded application of the coverture fraction to an enhanced pension was appropriate, insofar as the employee spouse had "received the benefit of the pension incentive package because of his age and as a reward for his length of service which was attributable to his efforts during the marriage." 311 N.J.Super. at 470, 710 A.2d 556.
From these authorities we conclude that there are some extraordinary post-judgment pension increases that may be proven to be attributable to post-dissolution efforts of the employee-spouse, and not dependent on the prior joint efforts of the parties during the marriage. In such instances, these sums must be excluded from equitable distribution and the application of the coverture fraction may be insufficient to accomplish this purpose.
When a claim is made to exclude post-dissolution sums, the employee-spouse seeking exclusion bears the burden of proving with calculable precision what portion of the increase in the pension's value is immune from equitable distribution. See Pacifico, supra, 190 N.J. at 269, 920 A.2d 73 (reiterating that "the burden of establishing immunity from distribution of a particular marital asset or portion of an asset rests upon the spouse who asserts it").
*888 A plenary hearing affords the airing of proofs regarding the nature of the promotion and whether any corresponding pension enhancement was an ordinary increase arising from the joint efforts of the parties during their marriage, or whether the sums are separate assets generated during the post-judgment pre-retirement efforts of defendant excludable from equitable sharing.
We agree with defendant's statement that the active duty and reservist components of his earnings are discernable, as one can not only calculate the points earned through the two distinct periods of military service, but also obtain the demarcated salary for each rank held. Nevertheless, a showing that the promotion was awarded solely through his post-judgment work efforts, rather than related to past efforts, must be made.
In this regard, we address additional arguments raised on appeal. Plaintiff maintains the parties' course of conduct two years following defendant's retirement binds the asset's division at forty-two percent of the entire retirement asset. While the initial calculation made by the parties at the time defendant retired is a fact which may be considered by the court, it is not determinative of this dispute. Defendant does not advocate that the two years of payments be recomputed, only that future adjustments be properly made. We agree. If the pension enhancements are excluded from division as a matter of law, the past error made will not be binding for future payments. See Linek v. Korbeil, 333 N.J.Super. 464, 475, 755 A.2d 1229 (App.Div.) (holding equitable doctrines such as laches "cannot validly be used to sponsor an inequitable result"), certif. denied, 165 N.J. 676, 762 A.2d 657 (2000).
We also review defendant's suggestion that plaintiff's interest in his pension should be limited by his Captain's salary at the time of divorce. Essentially, defendant proposes to add an additional fraction to the formula, reflecting his pay as a Captain after eleven years of service, divided by his pay as a Major at the time of retirement. Defendant maintains this additional component, when used with the fraction of points earned during the marriage divided by total points earned during his military service, would satisfactorily exclude his post-divorce work efforts. We reject this proposition as presented because it limits plaintiff's interest as if the pension were awarded at the time of divorce, rather than deferred for almost twenty years.
We have disapproved of "the mixture of two separate and distinct evaluation and distribution methods by valuing the pension in present-day dollars and then delaying distribution to a date . . . in the future." Risoldi, supra, 320 N.J.Super. at 540, 727 A.2d 1038. See also Whitfield, supra, 222 N.J.Super. at 51-52, 535 A.2d 986. Our holding in Whitfield bears repeating:
We take this opportunity to note one variation on the offset distribution method which we specifically disapprove: to assign a present value to the pension at the time of the divorce; calculate the spouse's share based on that present value, and defer distribution until the pension is received. Such an approach is indefensible. The only reason for discounting to present value is to justify the payment in present dollars of a sum of money which is not due, if at all, until some time in the future. Obviously, if distribution is deferred until that future date, discounting is unnecessary. The actual sum of the pension received is then to be shared, not some past value to which the spouse had not had access in the interim. As it would be unjust to *889 require the pensioner to pay a full share of a future entitlement at the time of the divorce without discount, so it would be unthinkable to require the pensioner's spouse to defer receipt of an equitable share of the pension until a future date but reduce that entitlement to its value as of the time of the divorce. Simply put, future benefits should not be paid in present dollars without a discount and present benefits should not be discounted to the value of past dollars.
[Supra, 222 N.J.Super. at 51-52, 535 A.2d 986.]
See also Reinbold, supra, 311 N.J.Super. at 470-71, 710 A.2d 556 (reversing the court's use of present value to fix non-employee spouse's future interest in pension asset). The regular increases attributable solely to longevity are not immune when a distribution is deferred. See Reinbold, supra, 311 N.J.Super. at 470-71, 710 A.2d 556 (indicating that enhancement of benefit attributable to length of service is likewise attributable to efforts during marriage).
Defendant, by accepting deferral of plaintiff's pension interest rather than a present value offset against other marital assets as of the date of divorce, agreed to provide payment based on the value as of his actual retirement. If defendant had remained a Captain, there would be no dispute that plaintiff's interest in the retirement benefit would be fifty percent of his monthly Captain's pay at retirement, multiplied by the modified coverture fraction, using points rather than years. The applicable pay scale then is a Captain's salary after twenty years of service, not after merely eleven. Therefore, if defendant successfully excludes the sums relating to his promotion, the excluded pension differential would correspond to the pay difference between a Major's pay after twenty years of service and a Captain's after twenty years of service.
The trial court relied on the Colorado Supreme Court's endorsement of a "marital foundation theory" expressed in its opinion, Hunt, supra, 909 P.2d 525. That court concluded all post-judgment pension increases are the fruit of a "commingling of effort undertaken during the marriage and after the marriage[,] which together enhance the value of the future benefit." Id. at 534. Based on this conclusion, the Colorado Supreme Court treated any post-judgment military promotion like an ordinary cost of living increase. Ibid. Further, that court held "a pension qualifies for separate property treatment of post-dissolution increases only if the trial court can award the pension under the net present value theory at the time of dissolution." Id. at 539. While this rule may promote ease in calculation on what always proves to be a difficult issue, we disagree that it reflects New Jersey law.
Our Supreme Court has repeatedly recognized the distinction between includable and immune assets. See Crews v. Crews, 164 N.J. 11, 28-29, 751 A.2d 524 (2000) (stating dependent spouse is not entitled to share in the post-divorce good fortune of the supporting spouse); Moore, supra, 114 N.J. at 166, 553 A.2d 20 (holding that when computing a present value of a State pension, post-judgment cost-of-living pension increases attributable to the pension earned during the marriage are includable but not increases related to that portion earned after the marriage); Portner v. Portner, 93 N.J. 215, 219, 460 A.2d 115 (1983) (holding assets acquired after the "[marital] enterprise or partnership no longer exists" should not be included in equitable distribution). We adhere to that precept so "that assets acquired by gainful labor during the marriage or as a reward for such labor are distributable while assets *890 acquired after dissolution due solely to the earner's post-complaint efforts are his or her separate property." Reinbold, supra, 311 N.J.Super. at 469-70, 710 A.2d 556.
When analyzing assets for purposes of equitable distribution, the focus of our courts must always be "whether the nature of the asset is one that is the result of efforts put forth `during the marriage' by the spouses jointly[.]" Pascale v. Pascale, 140 N.J. 583, 609, 660 A.2d 485 (1995). Every case turns on its own facts and requires a case by case analysis. Painter v. Painter, 65 N.J. 196, 213-214, 320 A.2d 484 (1974). Although we recognize our opinion places a heavier burden on trial courts than the easily discernable "all in" rule of the Colorado Supreme Court, we conclude this methodology is necessary to remain true to the legislative mandate expressed in N.J.S.A. 2A:34-23.1, assuring that equitable distribution is "designed to advance the policy of promoting equity and fair dealing between divorcing spouses." Therefore, the trial court must consider all facts to discern whether the pension increases identified resulted from recognition of past contributions and service, or individual post-divorce work efforts, which remain separate property.

B.
Defendant also challenges the determined tax effect on the monies owed to plaintiff. The motion judge reduced the arrearages defendant owed for unmade payment by twenty percent. Defendant acknowledges that two years prior to the filing of the matter, payments he made to plaintiff were reduced only by fifteen percent, however he maintains his marginal tax rate was lower at that time as he was unemployed. Defendant has regained employment, which increased his marginal tax rate to an estimated twenty-five percent. He submitted a case information statement, accompanied by his tax return to support his position, yet that document is not included in the record on appeal.
The motion judge rejected plaintiff's argument, stating:
I am persuaded that I need to determine the appropriate credit to be given as this matter has dragged on for a substantial period of time and . . . needs to be resolved quickly so that either party can pursue whatever further legal action they deem is appropriate. I will, therefore,. . . establish the tax off-set in the amount of 20 percent.
The court's conclusion lacks the support critical to our review. Ronan v. Adely, 182 N.J. 103, 110-11, 861 A.2d 822 (2004); Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980). Further, we are hampered with the omission of defendant's tax return and the lack of response from plaintiff. This provision must also be reversed.
In a footnote in her brief, plaintiff states the difference in the tax obligation is small and "for the sake of judicial economy" she will not contest defendant's computations.
Plaintiff may, of course, elect to compromise the issue, but if she elects to contest defendant's computations, on remand, the trial court is required to make adequate findings of fact to support its conclusion. Foley, Inc. v. Fevco, Inc., 379 N.J.Super. 574, 588-89, 879 A.2d 1242 (App.Div.2005); Barnett & Herenchak, Inc. v. State of New Jersey, Dep't of Transp., 276 N.J.Super. 465, 470-73, 648 A.2d 256 (App.Div.1994).

C.
Lastly, defendant argues the court abused its discretion in awarding plaintiff counsel fees and costs in connection with his opposition to her enforcement motion and to respond to his motion for reconsideration. The assessment of counsel fees is discretionary, and will not be reversed except upon a showing of an *891 abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001). An abuse of discretion "arises when a decision is `made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex County Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir.1985)). "We will disturb a trial court's determination on counsel fees only on the `rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J.Super. 298, 317, 953 A.2d 1219 (App.Div.2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995)).
An allowance for counsel fees is permitted to any party accorded relief following the filing of a motion in aid of litigant's rights, R. 1:10-3, or to any party in a divorce action, R. 5:3-5(c), subject to the provisions of Rule 4:42-9. To determine whether and to what extent such an award is appropriate, the court must consider:
(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
[R. 5:3-5(c).]
The court contrasted the parties' conduct, noting defendant unilaterally ceased remitting payments to plaintiff yet she remained patient, attempted to resolve the matter without resorting to litigation, and volunteered to file the necessary forms with DFAS. After reviewing defendant's case information statement, the court concluded he had the financial ability to shoulder a portion of plaintiff's counsel fees. The motion judge also determined defendant did not file his opposition and motion in bad faith, but concluded plaintiff should be awarded counsel fees incurred in connection with her initial motion and a portion of the counsel fees incurred on the motion for reconsideration.
Defendant asserts that the award was inappropriate because the court failed to analyze the parties' relative incomes or plaintiff's ability to pay her own counsel fees. We agree with this observation and also note the court failed to delineate those counsel fees incurred in enforcing an existing order, a basis for an award pursuant to Rule 1:10-3. We instruct the trial court to review its counsel fee award in light of the determinations on remand, as an award of counsel fees may abide that event.
Reversed.
NOTES
[1] Judge Axelrad did not participate in oral argument. She joins the opinion with counsel's consent. R. 2:13-2(b).
[2] A third possibility for distribution of a pension interest involves a hybrid of the other two methods involving a partial-deferred distribution, which "`would entail a current valuation award of the appropriate share of the non-contingent portion of a pension and a deferred distribution of the share of the contingent benefits if and when they are paid to the employee spouse.'" Claffey, supra, 360 N.J.Super. at 257, 822 A.2d 630 (quoting Moore, supra, 114 N.J. at 151, 553 A.2d 20).
[3] Most often, a qualified domestic relations order (QDRO) is used to transfer the interest to the non-employee spouse. The QDRO "directs the pension plan administrator to distribute, in accordance with the coverture fraction, a portion of the periodic pension benefit to the non-pensioner spouse[,]" to assure the direct payment to the non-employee spouse and that each party would bear the tax consequences attributable to his or her respective share. Claffey, supra, 360 N.J.Super. at 257-58, 822 A.2d 630.