NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3531-15T4

LEMAD CORPORATION,

 Plaintiff-Respondent/
 Cross-Appellant,

v.

IRENE HONACHEFSKY, JIMMY AGUIRRE
and AUDREY BETH AGUIRRE,

 Defendants,

and

WILLIAM B. HONACHEFSKY and BONITA
E. HONACHEFSKY,

 Defendants-Appellants/
 Cross-Respondents.
______________________________________

IRENE HONACHEFSKY,

 Third-Party Plaintiffs,

and

WILLIAM B. HONACHEFSKY and BONITA
E. HONACHEFSKY,

 Third-Party Plaintiffs-
 Appellants/Cross-Respondents,

v.
CHARLES M. URBAN in his individual
capacity, and DANIEL W. SOLES,

 Third-Party Defendants.

______________________________________

 Submitted October 17, 2017 – Decided November 14, 2017

 Before Judges Leone and Mawla.

 On appeal from State of New Jersey, Chancery
 Division, Morris County, Docket No. C-000030-
 08.

 William B. Honachefsky and Bonita E.
 Honachefsky, appellants/cross-respondents pro
 se.

 Martin & Tune, LLC, attorneys for
 respondent/cross-appellant (Daniel B. Tune,
 of counsel and on the brief; William E.
 Reutelhuber, on the briefs).

PER CURIAM

 This matter concerns a dispute over an easement between the

plaintiff Lemad Corporation (Lemad) and defendants William and

Bonita Honachefsky (the Honachefskys), which the parties have been

disputing since 2004. In 2012, after numerous pretrial motions

and lengthy discovery the parties settled their dispute.

Thereafter, the Honachefskys appealed from the order denying their

motion to vacate the settlement agreement, which we affirmed in

Lemad Corp. v. Honachesfky, No. A-5582-12 (App. Div. October 24,

2014). The terms of the settlement required the Honachefskys to

establish the new easement. When they failed to do so, Lemad

 2 A-3531-15T4
filed a motion to enforce litigant's rights pursuant to Rule 1:10-

3. The Honachefskys filed a cross-motion to declare the settlement

agreement null and void. Both parties also sought counsel fees.

 The trial court issued orders on March 11, 2016 and May 10,

2016, holding the Honachefskys in violation of litigant's rights

and awarding Lemad counsel fees, respectively. The Honachefskys

appeal from both orders, and Lemad cross-appeals from the order

granting counsel fees. We affirm.

 I.

 The following facts are taken from the record. Lemad

purchased lot 6 on block 68 in Clinton Township in 2004. At that

time, Irene Honachefsky owned a single-family home on lot 4; the

Honachefskys owned a single-family home on lot 4.01; and Jimmy and

Audrey Beth Aguirre owned a single-family home on lot 5. The

Honachefskys' and Aguirres' properties are only accessible by way

of a ten foot wide easement, bearing a road called Echo Lane,

which runs from those properties through lot 6 to the public

street. The easement was deeded to Irene Honachefsky and her late

husband in 1956. Lemad purchased lot 6 subject to the easement

by lots 3, 4, 4.01, and 5 for ingress and egress.

 After purchasing lot 6, Lemad obtained a survey of the

property and discovered Echo Lane had branched out beyond the

original deeded description. As a result, Lemad suggested an

 3 A-3531-15T4
agreement between it and the Honachefskys regarding the

maintenance of Echo Lane. The Honachefskys claimed adverse

possession over any portion of Echo Lane not described in the

original deeded easement.

 From August 2007 until April 2012, Lemad and the Honachefskys

engaged in litigation, and following discovery each filed summary

judgment motions. Before oral argument of their motions, the

parties engaged in settlement discussions and reached an

agreement. The terms of the settlement agreement placed on the

record were as follows:

 Lemad Corporation which owns the property that
 is encumbered by an existing ten-foot recorded
 easement, [] will consent to draft a new
 easement. That easement will be 14-foot in
 width. The 14-foot width will run from the
 northerly property line of Lemad and will
 extend out 14 feet from that property line for
 the entire length of the Lemad property.
 Lemad will flag that new easement area. It
 will draw the draft easement and the metes and
 bounds descriptions for the same. The
 easement . . . will be a nonexclusive access
 easement. It will inure to the benefit, and
 run with the land of both Mrs. Honachefsky's
 track, Mr. and Mrs. Honachefsky's track; and
 the successors in interest to the Aguirre
 property who is Mrs. Fernandez and one other
 person. . . . So the ten-foot easement will
 be expanded to 14 feet. It will be delineated,
 it will be described by metes and bounds in
 an easement that will be recorded . . . in the
 Hunterdon County Clerk's office. And it will
 have the nonexclusive right of all parties who
 are beneficiaries to the easement to maintain
 the roadway within the easement area,

 4 A-3531-15T4
 including the grading, putting down the stone,
 and trimming brush, grass and weeds as
 necessary to maintain the adequate width of
 the easement . . . [and t]he integrity of the
 easement area. . . . The 14-foot easement
 will include the disputed 4.59 feet that is
 basically between both Honachefskys'
 properties and the current Echo Lane; there
 was a gore or a disputed area there. That
 will now be granted as part of an easement.
 Which, they can do with the entire length of
 the easement whatever maintenance, putting
 down of stone, berming as necessary to
 maintain the integrity of the roadway for all
 parties' benefits.

 [Lemad Corp., supra, slip op. at 3-5]

Thereafter, the Honachefskys agreed to inform the prosecutor they

no longer wished to pursue criminal charges they had filed against

Lemad's principal shareholder, and agreed they would pay up to

$2000 towards establishing the new easement. Finally, the parties

agreed to have the easement marked, recorded, and improved within

eight months.

 The Honachefskys moved to vacate the settlement agreement.

The trial court denied the Honachefskys' motion, finding they were

fully aware of the binding nature of the settlement agreement and

had not indicated any hesitancy or lack of understanding

surrounding the agreement. As we noted above, the Honachefskys

appealed from the order denying their motion and sought to

invalidate their settlement.

 5 A-3531-15T4
 We affirmed the court's order, and held the trial court

"painstakingly questioned all parties to ensure that they

understood and agreed to the terms as stated on the record, and

that they wanted to place the settlement on the record that day."

Id. at 5. We noted all essential terms of the settlement agreement

were present, there was "no fraud, misrepresentation or other

misdeeds that warrant vacating the settlement agreement," and

merely because "William and Bonita [Honachefsky] have now second

guessed their entry into the settlement agreement does not warrant

its reversal." Id. at 11.

 After our affirmance, Lemad recorded the settlement agreement

on January 8, 2015. Lemad then sent the Honachefskys a notice on

April 27, 2015, regarding their obligation to make the improvements

to Echo Lane. Lemad issued a second notice on June 3, 2015. A

final notice was sent on July 7, 2015, by certified and first

class mail, which was returned unclaimed on August 7, 2015.

 Because the Honachefskys failed to complete any work on Echo

Lane, Lemad filed a motion to enforce litigant's rights pursuant

to Rule 1:10-3. The Honachefskys filed a cross-motion to declare

the settlement null and void, have it removed from their chain of

title, and requested counsel fees. The trial court entered a

March 11, 2016 order finding the Honachefskys in violation of the

settlement agreement. The court gave Lemad limited power of

 6 A-3531-15T4
attorney to begin the work on the easement. The court ordered the

Honachefskys to pay for the bid/estimate from the contractor hired

by Lemad, pay $1000 for the cost of any applications and permits,

and reimburse Lemad any additional necessary funds within two days

of notice. The trial court also ordered the Honachefskys to pay

counsel fees.

 II.

 We begin with our standard of review. We review a trial

court's enforcement of litigant's rights pursuant to Rule 1:10-3

under an abuse of discretion standard. Barr v. Barr, 418 N.J.

Super. 18, 46 (App. Div. 2011). Generally, Rule 1:10-3 is "a

civil proceeding to coerce the defendant into compliance with the

court's order." Pasqua v. Council, 186 N.J. 127, 140 (2006)

(quoting Essex Cty. Welfare Bd. v. Perkins, 133 N.J. Super. 189,

195 (App. Div.), certif. denied, 68 N.J. 161 (1975)). As such, a

trial judge's exercise of discretion will not be disturbed absent

a demonstration of abuse of discretion resulting in injustice.

Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988). An

abuse of discretion "arises when a decision is 'made without a

rational explanation, inexplicably departed from established

policies, or rested on an impermissible basis.'" Flagg v. Essex

Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-

 7 A-3531-15T4
Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265

(7th Cir. 1985)).

 Additionally, the imposition of counsel fees in connection

with a Rule 1:10-3 motion also is reviewed under an abuse of

discretion standard. See Packard-Bamberger & Co. v. Collier, 167

N.J. 427, 444 (2001) (holding a counsel fee award "will not be

reversed except upon a showing of an abuse of discretion."). "An

allowance for counsel fees is permitted to any party accorded

relief following the filing of a motion in aid of litigant's

rights, R[ule] 1:10-3." Barr, supra, 418 N.J. Super. at 46.

 III.

 The Honachefskys argue the trial judge erred by granting

Lemad's motion because: (1) Lemad was attempting to enforce an

agreement which was not the original intent of the parties; (2)

the agreement did not contemplate obtaining permits or

applications for the construction of the easement; and (3) the

Honachefskys had only agreed to pay for repairs to the easement

in the amount of $2000. We conclude these arguments lack merit

and are contradicted by the record, settlement agreement, and our

previous determination in this matter.

 Indeed, the trial court found "[t]he easement is fourteen

feet, the easement is the duration of the Plaintiff's property,

and the Defendant pays for it[.]" This finding was based on the

 8 A-3531-15T4
trial court's review of the record of the original settlement

proceedings and a review of our first decision. In our decision,

we noted "[a]s to the cost of the establishment of the new

easement, the settlement specifically provided that all parties

who are beneficiaries to the easement have the nonexclusive

responsibility to maintain the roadway." Lemad, supra, slip op.

at 11. We explained that the parties' settlement required the

Honachefskys to bear both the cost and the responsibility to

establish the new easement. Id. at 11-12.

 The Honachefskys' obligation to establish the new fourteen

foot wide easement was defined in the settlement agreement based

on William Honachefsky's representation he could create the

easement himself, given his skill and expertise as a surveyor.

Id. at 5. At the time of the settlement, the trial court

specifically addressed his role in establishing the easement:

 Mrs. B. Honachefsky: Are we going to take the
 whole financial burden then?

 The Court: Well, Mr. Honachefsky said that he
 thought he could do it for $2,000, which is,
 you know a small amount to pay for what you
 are getting in return which is the 4.59 feet.
 The extra footage in the easement, as well as
 your ability to grade the property so it
 doesn't flow on your property or your mother's
 property or anybody else's property anymore.
 And Mr. Honachefsky I think knows how to do
 this.

 9 A-3531-15T4
 Mrs. B. Honachefsky: Is that what you want,
 Bill?

 Mr. W. Honachefsky: That is fine.

 [Id. at 11-12.]

Since the Honachefskys agreed to do the work and bear the costs

of establishing the easement, the trial court correctly concluded

their failure to do so was a violation of litigant's rights.

 Additionally, the trial judge's decision to grant Lemad

limited power of attorney to establish the new easement on the

Honachefskys' behalf, and reimburse Lemad for the costs of doing

so, including the permits, was not an abuse of discretion. The

Supreme Court has stated "[t]he scope of relief in a motion in aid

of litigants' rights is limited to remediation of the violation

of a court order." Abbott v. Burke, 206 N.J. 332, 371 (2011).

The remedy fashioned by the trial court here was precisely what

was necessary to achieve the goals of the parties' settlement.

 IV.

 The Honachefskys also argue Rule 4:50-1 applies, which they

assert "provides relief from judgments in situations in which,

were it not applied, a grave injustice would occur." They claim

the trial court's orders are "extremely contrary to the unanimously

acknowledged real intentions of the April 13, 2012 settlement,

which if allowed to stand, would result in an unjust, one-sided

 10 A-3531-15T4
unconscionable contract totally in favor of the [r]espondent." We

disagree.

 The record demonstrates the Honachefskys' cross-motion in the

trial court did not seek relief from the settlement agreement

under Rule 4:50-1. Instead, they raise this argument for the

first time on appeal. Relief under Rule 4:50-1 must first be

sought in the trial court. It does not constitute a basis for

relief on appeal where it was not sought in trial court. Indeed,

 It is a well-settled principle that our
 appellate courts will decline to consider
 questions or issues not properly presented to
 the trial court when an opportunity for such
 a presentation is available "unless the
 questions so raised on appeal go to the
 jurisdiction of the trial court or concern
 matters of great public interest."

 [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229,
 234 (1973) (quoting Reynolds Offset Co., Inc.
 v. Summer, 58 N.J. Super. 542, 548 (App. Div.
 1959), certif. denied, 31 N.J. 554 (1960)).]

For these reasons, we decline to address this claim.

 V.

 Lastly, we address both parties' arguments challenging the

trial court's counsel fee determination. The Honachefskys claim

the trial judge's orders awarding counsel fees were unwarranted.

Lemad claims the award was too little and the trial court should

have made it whole by granting all counsel fees and costs incurred,

which totaled $11,113. We disagree on both accounts.

 11 A-3531-15T4
 Rule 1:10-3 provides "[t]he court in its discretion may make

an allowance for counsel fees to be paid by any party to the action

to a party accorded relief under this rule." "[T]his rule

provision allowing for attorney's fees recognized that as a matter

of fundamental fairness, a party who willfully fails to comply

with an order or judgment entitling his adversary to litigant's

rights is properly chargeable with his adversary's enforcement

expenses." Pressler & Verniero, Current N.J. Court Rules, cmt.

4.4.5 on R. 1:10-3 (2018). Therefore, a counsel fee award "will

not be reversed except upon a showing of an abuse of discretion."

Packard-Bamberger, supra, 167 N.J. at 444.

 The trial court found an award of counsel fees appropriate.

The judge stated "I will grant counsel fees because I think the

issues were appropriately raise[d] by the [p]laintiff. The

[d]efendants have an obligation to honor it. Coming here to . . .

me to modify something that's been affirmed by the Appellate

Division is not appropriate." Thereafter, in the May 10, 2016

order, the trial court fixed the amount of counsel fees due at

$2000, and provided further reasoning for doing so. The court

stated:

 Fees are awarded not due to any bad faith.
 The estimate of $2000 – was not set forth as
 the cap on the costs of relocating the
 easement. The reasonable inference from the
 settlement is that defendants would at their

 12 A-3531-15T4
 cost relocate the easement. That they
 resisted causes this award of counsel fees.
 (Per R[.] 1:10-3)[.] The hourly rate and
 services rendered are reasonable and
 appropriate. Given the facts presented by
 both parties, the court concludes $2000 is the
 appropriate amount.

 These findings clearly demonstrate the judge's careful

consideration of the relevant factors in fashioning the counsel

fee award. We can discern no abuse of discretion.

 Affirmed.

 13 A-3531-15T4