**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0935-22

NATALYA UTLIK,

    Plaintiff-Respondent,

v.

GEORGE UTLIK,

    Defendant-Appellant.

_____

> Argued January 30, 2024 – Decided February 16, 2024
>
> Before Judges Smith and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0419-13.
>
> Matheu D. Nunn argued the cause for appellant (Einhorn, Barbarito, Frost & Botwinick, PC, attorneys; Matheu D. Nunn, Jessie M. Mills and Emily Zurich Deyring, on the briefs).
>
> Matthew Blake Lun argued the cause for respondent (Law Office of Matthew Blake Lun; Francesca Madeline O'Cathain of counsel and on the brief, Amanda M. Yu, on the brief).

PER CURIAM

The parties married in 2007, and Angelina, their only child, was born in 2011. The final judgment of divorce (FJOD) was entered on February 28, 2013, and it incorporated the parties' property settlement agreement (PSA). When Angelina was born, the parties resided together at defendant's parents' home in Millstone. Shortly thereafter, they rented an apartment in East Brunswick. Upon the parties' separation, defendant, the parent of primary residence, and Angelina returned to live with defendant's parents in Millstone. Under the PSA, the parties shared equal fifty-fifty parenting time.

After the divorce, the parties co-parented for several years without litigation. In 2017, plaintiff began to suspect defendant had unilaterally moved to New York City, where he worked as an attorney, and that Angelina remained in Millstone with her grandparents. Plaintiff's suspicions were aroused by comments made by Angelina regarding how little time she spent with defendant, only seeing him on weekends. In September 2018, plaintiff retained a private investigative service, Alpha Group Investigations, to ascertain whether defendant was residing in Millstone during his parenting time. Investigators determined defendant was leasing a New York City apartment and observed him

A-0935-22

there on nine mornings out of sixteen total surveillance days during his parenting time.

Plaintiff emailed defendant in April 2019, regarding his time spent in NYC during his parenting time, and suggested they both relocate closer to NYC. Plaintiff informed him she was relocating to Fanwood, and suggested they enroll Angelina in a Fanwood elementary school. Defendant claimed he leased an apartment closer to his employment to utilize when he was not exercising parenting time. Plaintiff eventually moved to Fanwood and applied to enroll Angelina in a Fanwood elementary school. She also notified defendant that she sought a modification of their parenting schedule to have Angelina live with her Monday through Friday and every other weekend.

In May 2019, plaintiff moved to: modify the custody and parenting time set forth in the PSA; be designated as parent of primary residence; and reduce defendant's parenting time to every other weekend. Defendant cross-moved in June, seeking various forms of relief, including but not limited to: denial of plaintiff's motion; sole legal custody of Angelina; a reduction in plaintiff's parenting time to every other weekend; the continued enrollment of Angelina in Marlboro Preparatory Academy; and an order to enroll Angelina in therapy.

3

On July 12, 2019, the motion court ordered a plenary hearing on the parties' applications for modification of custody and parenting time. The court also ordered the parties to continue parenting time in accordance with the PSA.

After a flurry of pre-trial motions by the parties, they ultimately settled on December 13, 2021, resolving all outstanding issues except for counsel fees and the division of certain costs related to Angelina. The parties agreed to submit these remaining issues to the trial court via certification. Pursuant to the settlement terms, the parties filed their moving papers in May 2022. The trial court heard argument on October 5, 2022.

On October 12, 2022, the court entered an order denying without prejudice both parties' requests for counsel fees and litigation costs. The court made findings, including: defendant failed to meet his burden for an award of counsel fees; defendant had the ability to pay his legal fees; each party would have trouble paying the other's legal fees; and plaintiff did not act in bad faith.

On appeal, defendant argues that the trial court misapplied the law when it issued its order denying him counsel fees. Defendant argues the trial court failed to conduct an adequate analysis of the relevant factors because it: placed disproportionate weight on its determination there was no bad faith; erred in finding there was no bad faith; and did not address the degree to which fees were

A-0935-22

incurred to enforce existing orders. Defendant further argues the trial court's decision is unsupported by substantial credible evidence in the record.

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Satz v. Satz, 476 N.J. Super. 536, 554 (App. Div. 2023) (quoting Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div 2011)). "An abuse of discretion occurs when a trial court makes 'findings inconsistent with or unsupported by competent evidence,' utilizes 'irrelevant or inappropriate factors,' or 'fail[s] to consider controlling legal principles.'" Steele v. Steele, 467 N.J. Super. 414, 444 (App. Div. 2021) (alteration in original) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015)). A trial court's failure to consider the appropriate factors, make the required findings, and state its conclusions of law constitutes a clear abuse of discretion. See Saffos v. Avaya Inc., 419 N.J. Super. 244, 270-71 (App. Div. 2011); R. 1:7-4(a).

When evaluating the appropriateness of a fee award, the trial court must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties . . . ; (4) the extent of the fees incurred by both parties; (5) any fees previously

awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Satz, 476 N.J. Super. at 554 (quoting R. 5:3-5(c)).]

In its written opinion, the trial court addressed each relevant factor under Rule 5:3-5(c).  The court first considered Rule 5:3-5(c)(1), the financial circumstances of the parties.  The court made findings based on the evidence in the record, including:  the parties' separation of their income; plaintiff's sales executive income of $106,378 per year; defendant's senior in-house counsel income of $190,000 per year plus an annual bonus; plaintiff's outstanding private debt of $58,041 to her fiancé; and plaintiff's outstanding student loan debt of $39,500.

Rule 5:3-5(c)(2) requires the court to consider the ability of the parties to pay their own fees or to contribute to the fees of the other party.  The trial court found plaintiff had paid approximately $188,000 in fees and costs, while defendant paid $176,845.97.  The court next found the parties would have difficulty contributing to the other's legal fees.  The trial court adequately considered this factor.

6

Rule 5:3-5(c)(3) requires the court to consider the reasonableness and good faith of the positions advanced by the parties. The court considered defendant's arguments, among them that plaintiff: acted in bad faith by misrepresenting certain facts regarding her relocation to Fanwood; needlessly prolonged the litigation; and refused to mediate or engage in settlement negotiations. The court rejected defendant's claims, finding the litigation was prolonged due to other factors, including: the COVID-19 pandemic; a lengthy discovery period, including depositions in February 2020 and May 2021; numerous mediation and settlement conferences; and the retention of best interest experts.

The court's conclusion that plaintiff did not act in bad faith is supported by the record. Plaintiff had a basis in fact to file her motion given the findings by Alpha Group concerning defendant's time spent in New York during his parenting time. While defendant argues plaintiff's bad faith is established by her admission that defendant resided in Millstone, we note plaintiff acknowledged defendant's Millstone residency in December 2021, long after her initial 2019 motion, and after defendant cancelled his NYC lease.

On this record, we need discuss factors Rule 5:3-5 (c)(4), (c)(5), and (c)(6) only briefly. The trial court addressed subparagraph (c)(4) by acknowledging

the fees incurred by each party, and noting no fees were previously awarded by the court, therefore subparagraph (c)(5) is not relevant. As to subparagraph (c)(6), the court considered the amount of fees each party had previously paid to their attorneys under Rule 5:3-5 (c)(2).

The court turned to Rule 5:3-5 (c)(7), and considered the results obtained. The court found the parties negotiated a consent order prior to trial, and that plaintiff agreed to a twenty-mile geographical proximity between the parties' residences and Angelina's therapist. The court found defendant conceded certain issues, including: the contingent allocation of certain parenting time; Angelina's attendance at the Hun School; and use of a parenting coordinator.

We are unpersuaded by defendant's argument that the court wrongly attributed equal weight to the parties' results because the consent order reflected little of plaintiff's initial requested relief. We observe defendant also failed to achieve much of the relief he sought in his cross-motion. We conclude the trial court appropriately considered credible evidence in the record and found each party achieved some measure of relief sought.

Finally, Rule 5:3-5 (c)(8) requires the trial court to consider the degree to which the parties incurred fees to enforce existing orders or compel discovery.

Defendant contends plaintiff violated the PSA and the final consent order and argues the court failed to consider plaintiff's violation.

The court noted each party claimed the other was violating the PSA:

> Plaintiff further alleges that [d]efendant failed to comply with numerous provisions about joint legal custody, Angelina's health insurance coverage, and co-parenting communication of the [PSA] including paragraphs 3.1, 3.2, 3.3, 3.11, 3.12, 3.14, 7.3, and 7.5. On the other hand, [d]efendant makes similar contentions regarding [p]laintiff's noncompliance with the agreed upon [PSA].

The trial court properly considered the extent to which legal expenses were incurred to enforce orders, and it concluded that neither side warranted relief.

We comment briefly on defendant's contention during argument that the trial court's written findings were insufficient, thus warranting remand. Although the court's Rule 5:5-3(c) analysis could have hewn more closely to the facts in the record, we conclude its written statement of reasons was adequate and supported by the record evidence, sufficient to meet the Rule 1:7-4 standard. We therefore discern no basis to disturb the court's order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0935-22