**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATERIE DIVISION
DOCKET NO. A-3511-18T3

ERIC INSELBERG and
INSELBERG INTERACTIVE,
LLC,

      Plaintiff-Appellant,

v.


FRANK BISIGNANO and
FIRST DATA CORPORATION,

      Defendants-Respondents.

_____

Argued telephonically March 24, 2020 –
Decided May 4, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-4954-15.

Brian C. Brook argued the cause for appellants (Brook
& Associates, PLLC, attorneys; Brian C. Brooks on the
briefs).

Kevin H. Marino argued the cause for respondents
(Marino, Tortorella & Boyle, PC, Michael B.
Carlinsky, (Quinn, Emanuel, Urquhart and Sullivan,

LLP) of the New York Bar, admitted pro hac vice, R. Corey Worcester, (Quinn, Emanuel, Urquhart and Sullivan, LLP) of the New York Bar, admitted pro hac vice, and Matthew A. Traupman, (Quinn Emanuel Urquhart and Sullivan, LLP) of the New York Bar, admitted pro hac vice, attorneys; Kevin H. Marino, John B. Boyle, Michael B. Carlinsky, R. Corey Worcester, and Matthew A. Traupman, on the brief).

PER CURIAM

Plaintiffs appeal from an order entered by the Law Division on February 15, 2019, denying their motion to enforce litigants' rights. Plaintiffs claim defendants failed to comply with an October 27, 2017 consent order, which dismissed the entire case with prejudice and required defendants to return all sports memorabilia previously delivered as security for a $500,000 loan. Concluding the motion judge did not abuse her discretion, we affirm.

I

This case represents another chapter in long-running, contentious litigation between plaintiff Eric Inselberg and defendant Frank Bisignano. We begin with a summary of the relevant facts, which we derive from the motion record and our opinion on plaintiff's direct appeal. Inselberg v. Bisignano, No. A-1718-17 (App. Div. March 12, 2019).

In August 2010, Bisignano loaned $500,000 to plaintiff Inselberg Interactive, LLC (Interactive), a company owned by Inselberg.[1] The parties memorialized the terms of the loan in a seven-page agreement (the Loan Agreement). In addition to guaranteeing the loan, Inselberg secured it with certain patents and "additional security," consisting of "two boxes containing sports memorabilia owned by him[,] which he value[d] at $232,000." The parties attached to the Loan Agreement a three-page handwritten list itemizing the specific memorabilia.

In 2011, Interactive defaulted on the loan, after a federal grand jury indicted Inselberg for mail fraud. Interactive never made any payments on the loan, despite Bisignano extending the time for plaintiffs to cure the default.

As a result, in February 2013, the parties entered into an assignment agreement (the Assignment Agreement), whereby plaintiffs assigned the patents to Bisignano in partial payment and satisfaction of the loan. In pertinent part, the agreement provided:

> Interactive wishes to transfer, convey and assign all of its right, title and interest in and to the [patents] in partial payment and satisfaction of the indebtedness and other obligations under the Loan Agreement and the

---

[1] Inselberg created Interactive to provide marketing services for business technology he invented. After patenting the technology, Inselberg transferred the patents to Interactive.

> other Loan Documents and Bisignano is willing to accept such [p]atents in partial payment and satisfaction of the indebtedness and other obligations under the Loan Agreement and other Loan Documents.

In addition, Interactive "waived in full" any obligation to transfer the patents back to Inselberg and any right to a "realization of proceeds" related to the patents.

In May 2013, Inselberg secured dismissal of the indictment against him. Thereafter, Inselberg sought the return of the patents, claiming the value of the sports memorabilia held by defendants exceeded the amount due under the loan.

In May 2014, Inselberg requested access to the sports memorabilia in Bisignano's possession for the purpose of exchanging certain memorabilia of equivalent value. According to Inselberg, he brought $156,000 worth of his sports memorabilia to Bisignano's home, but his personal assistant – Moussa Ousmane – prevented Inselberg from taking any memorabilia in exchange. In March 2015, Inselberg contends that he went to Bisignano's home and "swapped out some of the memorabilia held by Bisignano for replacement memorabilia." In November 2015, Bisignano retained a sports memorabilia dealer, Steiner Sports, to provide a preliminary valuation of the sports memorabilia held as collateral. Steiner emailed Bisignano a list of the items together with a preliminary valuation of each item.

A-3511-18T3

After Bisignano's appointment as CEO of defendant First Data Corporation (First Data), Inselberg accused First Data of using his patented technology without a license and demanded the corporation purchase either the patents or an exclusive license to them. Shortly thereafter, Bisignano granted First Data a license to use or sell the patented technology, without requiring royalties for their use.

In December 2015, plaintiffs filed a ten-count complaint, alleging defendants breached specific provisions of the Uniform Commercial Code (UCC) and asserting various other claims, including the invalidity of the Assignment Agreement. Plaintiffs sought monetary damages for royalties from the transfer of the patents to First Data. Plaintiffs also asserted a conversion claim regarding the sports memorabilia.

After their efforts to remove all proceedings to federal court proved unsuccessful, defendants moved for dismissal of plaintiffs' complaint under Rule 4:6-2(e), arguing the assignment agreement constituted a strict foreclosure under N.J.S.A. 12A:9-620. In a written statement of reasons, the motion judge found the Loan Agreement entered into by the parties was valid and enforceable. The judge further concluded the Assignment Agreement transferring the patents constituted a valid strict foreclosure under N.J.S.A. 12A:9-620(a) and (c)

because it established the necessary record authenticated after default; in addition, he found that plaintiffs consented to Bisignano's acceptance of the collateral as partial satisfaction of plaintiffs' obligation under the Loan Agreement. Nevertheless, the judge declined to dismiss the complaint, finding the Assignment Agreement contained "no agreed upon value for the partial satisfaction" of plaintiffs' debt. The judge directed the parties to engage in discovery to determine the value of the patents and the amount that should be applied to plaintiffs' outstanding debt.

After the parties disagreed as to the scope of the ordered discovery, the judge issued the following clarification on October 5, 2017:

> The court did not 'deny in entirety' [d]efendants' motion. Clearly, the statement of reasons provided, at a minimum, the 'partial grant' of [d]efendants' motion, limiting the [p]laintiffs' recovery to any excess value greater than $500,000 that valuation of the collateral may produce. Thus, discovery will be limited to VALUATION of patents and sports memorabilia and nothing more.

After a conference with the motion judge later that month, defendants submitted a proposed order (the Final Order) that would result in the dismissal of all remaining claims while allowing plaintiffs to appeal without further delay. The Final Order submitted by defendants provided for the dismissal of plaintiffs' remaining claims with prejudice and defendants' agreement to:

6

a) Assign the [p]atents a value at least equal to the outstanding amount owed to Bisignano (thus effectively forgiving the entire $500,000 debt and all accrued interest);

b) Dismiss their counterclaims with prejudice; and

c) Return the sports memorabilia held as collateral to Inselberg.

Plaintiffs consented to the form of the order, but not its entry (to preserve their right to appeal the strict foreclosure ruling). The judge signed the Final Order on October 27, 2017, resulting in the dismissal of the action "in its entirety with prejudice."

Plaintiffs appealed and we affirmed, concluding the motion judge "correctly determined the [A]ssignment [A]greement constituted a valid strict partial foreclosure," which served to extinguish plaintiffs' rights and interests in the patents. Bisignano, slip op. at 9. We held that Bisignano became the owner of the patents upon execution of the [A]ssignment [A]greement, and that "the debt has been satisfied as defendant[s] agreed to assign the value of the loan and accrued interest as the value of the patents." Id. at 10. We further noted defendants' contention that plaintiffs' "conversion claim regarding the sports memorabilia" was rendered "moot" because "defendants agreed to return all of the sports memorabilia under the final order." Id. at 4 n.1.

7

On December 4, 2017, Inselberg and his attorney traveled to the office of defendants' attorney to retrieve all the sports memorabilia Inselberg previously provided as collateral. While extensive memorabilia was returned, Inselberg immediately determined that four pieces of memorabilia were missing.

On December 26, 2018, plaintiffs filed a motion to enforce litigants' rights, asserting Bisignano failed to return the following four items of sports memorabilia, as required by the Final Order: 1) a pair of Muhammad Ali boxing trunks worn during his 1977 fight against Ernie Shavers; 2) a football helmet worn by Larry Fitzgerald in 2010; 3) a Leroy Neiman serigraph of Michael Jordon; and 4) a Peter Max painting of Michael Jordan.[2] In a supporting ten-page certification, Inselberg provided extensive details regarding the sports memorabilia provided to Bisignano as collateral, and the various items that were "swapped out" over time. According to Inselberg, on March 24, 2015, he "created a final inventory of the items that [Bisignano] was keeping as collateral." He recounted that he "wrote out [the inventory] by hand at [Bisignano's] house," and that Ousmane worked with him to create it and made a copy of it.

---

[2] According to Inselberg, each artwork depicting Michael Jordan was signed by both the artist and Jordan himself.

A-3511-18T3

On January 17, 2019, Bisignano filed opposition, which included his own certification, stating he returned all the memorabilia Inselberg left with him as collateral for the loan. He certified, "As far as I know, I never possessed the Peter Max [artwork], the Ali trunks, or the Larry Fitzgerald helmet"; however, he acknowledged that these items of memorabilia could have been "swapped out by Inselberg on one of the two occasions" when he came to Bisignano's home in 2014 and 2015. Bisignano did confirm he possessed the Leroy Neiman artwork, claiming Inselberg gave it to him "as a gift." Despite this understanding, Bisignano gave the Neiman artwork to his attorneys, on the date he signed his certification, and instructed them to return it to Inselberg.

Bisignano also provided a certification from his personal assistant, Moussa Ousmane, who handled the exchanges when Inselberg came to Bisignano's home to swap out items of memorabilia. Ousmane denied ever receiving the Mohammad Ali trunks or the Neiman artwork from Inselberg. Ousmane also disputed Inselberg's claim that Inselberg gave him the Peter Max painting and the Neiman artwork on February 23, 2015, as he "was out of the country in Africa" at that time. Ousmane acknowledged observing Inselberg, in March 2015, with a handwritten inventory list, but denied participating in its creation.

9

On February 15, 2019, the motion judge denied plaintiffs' application to enforce litigants' rights. Citing Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012), the judge ruled:

> The [c]ourt does NOT find that . . . Bisignano, as the 'disobedient party,' was able to comply or that he failed to comply. Had the parties made a definitive inventory of the items and made same part of their settlement agreement, the [c]ourt would have some basis to determine if there was non-compliance. Instead the 'list' of items seems to be a moving target of sorts that has changed and has been subject to differing interpretations, causing both parties to resort to recollections of a third party (Ousmane). Unilateral emails and lists that do not indicate assent or agreement do not and cannot satisfy the burden associated with the relief requested. Inasmuch as the primary relief requested is denied, so too is the application for costs and fees.

Plaintiffs now appeal the denial of their motion to enforce litigants' rights.

II

Plaintiffs argue the motion judge erred by treating Bisignano's agreement to return the memorabilia as part of a "settlement agreement"; as a result, they contend the judge mistakenly focused on whether the parties ever finalized the list of items Bisignano agreed to return. Additionally, plaintiffs contend the judge erred when she failed to find that Bisignano "implicitly accepted" a

10

memorabilia list prepared by plaintiffs in November 2017, when Bisignano's counsel did not object to the list.

We review a trial court's enforcement of litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)). "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 459 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Rule 1:10-3 "allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order." North Jersey Media Grp., Inc. v. State, Office of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting In re N.J.A.C. 5:96 & 6:97, 221 N.J. 1, 17-18 (2015)). However, "before punitive or coercive relief can be afforded, the court must be satisfied that the party had the capacity to comply with the order and was willfully contumacious." Pressler & Verniero, Current N.J. Court Rules, comment 4.3 on R. 1:10-3 (2020). Thus, to find a violation of litigant's rights, the court must be satisfied that the offending party's actions were willful and unjustified. See P.T. v. M.S., 325 N.J. Super. 193, 206-07 (App. Div. 1999)

(holding it was in error to find ex-wife in contempt without finding that her failure to comply was willful and unjustified); see also Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005) (when determining a violation under R. 1:10-3, we must consider, "whether the plaintiff acted willfully and whether the defendant suffered harm, and if so, to what degree.").

The motion judge found the parties' failed to make a definitive inventory of the memorabilia in Bisignano's possession at the time they agreed to settle their case by entering into a consent order. Additionally, she found the email exchanges between the parties failed to establish a definitive inventory list. Absent a definitive inventory, the judge reasonably concluded she lacked an adequate basis to determine if there was willful non-compliance on the part of Bisignano.

Based upon our review of the motion record, we conclude the judge did not abuse her discretion in denying plaintiffs' motion to enforce litigants' rights. Plaintiffs failed to establish that the judge's decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.

The certifications of Ousmane and Bisignano dispute key parts of Inselberg's certification, creating genuine issues of material fact regarding

exactly what memorabilia remains unreturned, if any. Nevertheless, we do not view the denial of plaintiffs' motion as leaving Inselberg without a remedy. "A consent order is, in essence, an agreement of the parties that has been approved by the court." Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014). As such, a consent order operates as a contract between the parties. Ibid. Bisignano's obligation to return the memorabilia was an important part of the settlement agreement between the parties. Bisignano's alleged breach of his obligation under the settlement agreement occurred later, after the case was dismissed, when Bisignano allegedly failed to return all the sports memorabilia held as collateral to Inselberg. We discern no reason why Inselberg cannot now file a separate action alleging breach of the settlement agreement.[3] If Inselberg can establish that Bisignano breached the settlement agreement by failing to return certain items of memorabilia, then he would be entitled to specific

---

[3] We note the entire controversy doctrine "does not apply to bar component claims either unknown, unarisen or unaccrued at the time of the original action." Pressler & Verniero, Current N.J. Court Rules, comment 2 on R. 4:30A (2020); K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 70 (2002).

13

performance or damages in the amount of the fair market value of the unreturned items.[4]

We next turn to whether the motion judge abused her discretion in denying plaintiffs' request for attorney's fees. A court may award attorney's fees as a sanction under Rule 1:10-3, which "allows any litigant to invoke relief in aid of a judgment or order of a court." In re Daniels, 118 N.J. 51, 60 (1990). The purpose of the rule "is to provide a mechanism, coercive in nature, to afford relief to a litigant who has not received what a [c]ourt [o]rder or [j]udgment entitles that litigant to receive." D'Atria v. D'Atria, 242 N.J. Super. 392, 407 (Ch. Div. 1990) (discussing R. 1:10-5, later amalgamated with R. 1:10-3). A court may thus order monetary sanctions or equitable relief under Rule 1:10-3, "related to the litigant's damages" and not "primarily punitive in nature[,]" id. at 408, or an award of counsel fees "to be paid by any party to the action to a party accorded relief under this rule." R. 1:10-3. Thus, pursuant to the rule, "a party who willfully fails to comply with an order or judgment entitling his adversary to litigant's rights is properly charged with his adversary's enforcement

_____

[4] Of course, the determination of any such damages would likely involve additional discovery and expert testimony. The absence of such evidence provides additional support for the judge's decision to deny plaintiffs' motion without scheduling a plenary hearing.

expenses." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.4.5 on R. 1:10-3 (2020).

The decision to award counsel fees "rests within the sound discretion of the trial court." Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003). We disturb such determinations "only on the rarest occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

The judge denied plaintiffs' request for attorney's fees because the motion record failed to establish that Bisignano was a "disobedient party," who was able to comply and then failed to comply. Absent clear evidence of willful non-compliance, we discern no basis to conclude the judge abused her discretion in denying plaintiffs' request for attorney's fees. Maudsley, 357 N.J. Super. at 590.

Any arguments not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3511-18T3