861 A.2d 822

KATHLEEN F. RONAN, PLAINTIFF–APPELLANT, v. PETER
G. ADELY, DEFENDANT–RESPONDENT.

Argued October 13, 2004—Decided December 15, 2004.

---

*Kathleen F. Ronan* argued the cause pro se.

*Rosanne S. DeTorres* argued the cause for respondent.

Justice WALLACE delivered the opinion of the Court.

The trial court denied the request of the mother, the primary caretaker to change the surname of her son. The issue in this appeal is whether the court properly applied the best interests of the child standard, which includes a presumption in favor of the name selected by the primary caretaker. The Appellate Division affirmed in an unpublished opinion. We conclude that the courts below applied an improper standard and reverse.

## I.

Plaintiff Kathleen F. Ronan (plaintiff) and defendant Peter Adely, Jr. (defendant) are the biological parents of Brendan Peter Adely. They never married, but after plaintiff became pregnant, the parties attended counseling sessions and agreed with the counselor's recommendation to live together. A short while later, plaintiff moved into defendant's home.

The child was born on October 29, 1998, and the parties named him Brendan Peter Adely. The plan, at least from plaintiff's viewpoint, was for her to nurse Brendan until he weaned on his own. Plaintiff assumed most, if not all, of the childcare responsibilities.

The parties' relationship began to deteriorate. In December 1999, defendant asked plaintiff to take the baby and leave. Plaintiff agreed, and together with Brendan, moved to her parents' home.

Thereafter, plaintiff filed a complaint seeking sole legal custody of Brendan and reasonable child support. Defendant filed a counterclaim for joint legal custody and unsupervised visitation. Following a hearing in July 2000, a Family Part judge ordered joint legal custody, continued the agreement that defendant should pay monthly child support to plaintiff in the amount of $550, and set temporary visitation rights for defendant consisting of four hours on Saturday at plaintiff's residence, as she was still breast-feeding.

In February 2001, plaintiff married Kevin Milz and moved to a neighboring town. Plaintiff wrote to defendant on March 3, 2001, and informed him of her recent marriage and her change of address. Soon thereafter, defendant visited Brendan at the new address.

Defendant then filed a motion seeking increased visitation and other relief unrelated to this appeal. Plaintiff filed a cross motion opposing the increased visitation and seeking permission to change Brendan's name from Brendan P. Adely to Brendan P. Adely Ronan. The parties waived oral argument, and on July 13, 2001, the trial court ordered the parties to participate in professional custody/parenting time evaluation. In addition, the trial court denied plaintiff's request to change Brendan's surname to Ronan, noting that "[a]lthough the parties may certainly agree to such an arrangement, this Court is aware of no precedent for imposing it under the circumstances where a name has already been given and has been used for over 2 years." At the time of that order Brendan was approximately two years and nine months old.

Subsequently, plaintiff and defendant engaged in custody/parenting time evaluations with Dr. Most. Upon completion of the evaluations, which included psychological testing of the parties,

Dr. Most recommended that they continue to have joint legal custody with plaintiff as the primary caretaker. Dr. Most also recommended that defendant's parenting time be increased substantially.

Following a hearing, the parties agreed to Dr. Most's parenting time recommendation for defendant. The consent order also provided that beginning July 13, 2002, defendant would have unsupervised overnight parenting time with Brendan.

Upon implementation of the new parenting time arrangement, plaintiff perceived that Brendan was developing behavior problems. She previously had taken Brendan to visit a psychologist, Dr. Thompsen, and once again sought her services. Dr. Thompsen saw Brendan six times between October 2001 and June 3, 2002. Dr. Thompsen recommended that "the issue of sleepover visitations" be delayed until Brendan completed his transition to the Montessori School that he was to begin attending in September 2002. Dr. Thompsen anticipated the transition would take approximately three months. In a June 3, 2002, report, Dr. Thompsen listed Brendan's surname as Ronan. By that time, Brendan was three years and eight months old.

Consistent with Dr. Thompsen's report, plaintiff filed a motion to postpone defendant's overnight parenting time. Defendant filed a cross-motion to enforce the parenting time arrangement in the April 19, 2002, consent order and, among other things, alleged that plaintiff continued to refer to Brendan using the surname Ronan, and that when asked, Brendan would use the surname Ronan.

By order dated September 27, 2002, the trial court denied plaintiff's requests, finding that she was "sabotaging the sleep over provisions" of the April 19, 2002, consent order, and that Brendan would have adjusted to overnight visits "had [plaintiff] not defied the Consent Order." Plaintiff appealed from the September 27, 2002, order as well as the prior order denying her request to change Brendan's surname to Ronan. In her brief to the Appellate Division, she asserted that Brendan referred to

himself by the surname Ronan. Defendant did not dispute that assertion. Brendan was more than four years old at the time plaintiff filed her appeal below.

In an unreported decision, the Appellate Division canvassed the case law and concluded that plaintiff had failed to demonstrate how assuming the surname Ronan would promote Brendan's best interests without risking damage to a significant connection with his father. The panel affirmed the trial court's determination. We granted certification limited solely to the issue of Brendan's surname. 179 *N.J.* 310, 845 *A.*2d 135 (2004).

## II.

On appeal, as she did below, plaintiff contends the trial court failed to apply the principles set forth in *Gubernat v. Deremer*, 140 *N.J.* 120, 141–42, 657 *A.*2d 856 (1995), in denying her name change request. Specifically she argues that the trial court erred in finding there was no precedent to support the name change. She claims that defendant orally agreed to the name change and wrote a child support check in which the payee line read "Kathleen Ronan/ITF [in trust for Brendan Ronan]." Further, she asserts that the proposed name change would use surnames Adely and Ronan thus acknowledging Brendan's relationship to both his parents and both families. She adds that defendant presented no evidence to rebut the presumption that the name chosen by her as Brendan's primary caretaker was in the best interest of Brendan.

Defendant raises a procedural argument that the appeal of this issue comes too late because the order denying plaintiff's name change request was more than forty-five days prior to plaintiff's filing of her appeal. Beyond that, defendant argues that the trial court's factual conclusions denying the name change are supported by credible evidence. Further, he urges that there is no written record to support the assertion that he orally agreed to change Brendan's surname to Ronan.

## III.

We need not retrace the history of the use of surnames, as Justice Stein thoroughly accomplished that task in *Gubernat, supra,* 140 *N.J.* at 126–141, 657 *A.2d* 856. Suffice it to say that in *Gubernat,* we concluded that gender-based presumptions should play no part in a child's surname and that in resolving disagreements between parents concerning a child's surname, "we apply the best-interests-of-the-child standard." *Id.* at 141, 657 *A.2d* 856. This standard applies whether the child is born in or out of wedlock. *Id.* at 139, 657 *A.2d* 856. We explained that "[t]he preservation of the paternal bond is not and should not be dependent on the retention of the paternal surname." *Id.* at 141, 657 *A.2d* 856.

 In applying the best interests of the child standard, however, we noted that courts have considered a number of criteria including:

> [T]he length of time that the child has used one surname, the identification of the child as a member or part of a family unit, the potential anxiety, embarrassment, or discomfort the child might experience if the child bears a surname different from the custodial parent, and any preferences the child might express, assuming the child possesses sufficient maturity to express a relevant preference.
>
> [*Id.* at 141, 657 *A.2d* 856 (citations omitted).]

Courts have experienced difficulty in applying those criteria due to the "speculative quality of the inquiry into the effect that the chosen surname would have on the future welfare and happiness of the child." *Id.* at 142, 657 *A.2d* 856.

To lessen that difficulty and to increase the predictability of such analyses, "we adopt[ed] a strong presumption in favor of the surname chosen by the [primary caretaker]." *Id.* at 144, 657 *A.2d* 856. Underlying that presumption is "a basic principle of family law—that the parent having physical custody of the child is generally accorded broad responsibility in making daily child-rearing decisions." *Id.* at 142, 657 *A.2d* 856. We found implicit in that broad responsibility the supposition that the primary caretaker "act[s] in the best interests of the child in discharging that obligation . . . [,]" and that the naming or changing of the name of

a child is like other decisions left to the primary caretaker. *Ibid.* We concluded that the secondary caretaker "bears the burden of demonstrating by a preponderance of the evidence that despite the presumption favoring the [primary caretaker]'s choice of name, the chosen surname is not in the best interests of the child." *Id.* at 145, 657 *A.2d* 856.

In applying that new standard in *Gubernat*, we held that the father had not presented sufficient evidence "demonstrating that the retention of the [maternal] surname would be contrary to [the child]'s best interests, nor ... that the [paternal] surname would better serve [the child]'s interests." *Id.* at 147, 657 *A.2d* 856. Because there was insufficient evidence to rebut the presumption in favor of the name chosen by the primary caretaker, we concluded it was error for the trial court and the Appellate Division to grant the father's name change request. *Ibid.*

Following *Gubernat*, our Appellate Division first addressed the child name change issue in *J.S. v. D.M.*, 285 *N.J.Super.* 498, 667 *A.*2d 394 (App.Div.1995). In that case, the mother and father conceived a child out of wedlock. The mother was the primary caretaker and the father was the secondary caretaker. The father sought to change the surname of the child from the mother's surname to his own. The trial court denied the request to change the surname, but ordered that the father's surname be the child's middle name. *Id.* at 499, 667 *A.*2d 394. On appeal, the Appellate Division affirmed, concluding that the father had failed to overcome the presumption that the surname selected by the primary caretaker was in the best interest of the child. *Id.* at 500, 667 *A.*2d 394.

In *Staradumsky v. Romanowski*, 300 *N.J.Super.* 618, 693 *A.*2d 556 (App.Div.1997), an unmarried couple named their newborn child Stefan Francis Joseph Romanowski, Romanowski being the surname of the father. After the parties separated, the court ordered joint legal custody with the mother having primary custody. The mother began using Christian as the child's first name instead of Stefan. The mother eventually sought to change both

the first name and the surname of the child and to eliminate one of his middle names by renaming the child Christian Francis Staradumsky. The trial court found that the father presented no evidence to rebut the presumption that the mother, as the primary caretaker, acted in the child's best interests in changing the child's name. The Appellate Division approved the change of the child's first and last name, but saw "no reason why the child's middle name should not include the father's surname (or a name related to his family) if that is his desire...." *Id.* at 621, 693 *A.2d* 556. The panel concluded that this solution would preserve some of the father's heritage and also would provide a basis for the father's family to continue to call the child Stefan as that would be the child's middle name. The panel exercised its original jurisdiction to modify the order to change the child's name to Christian Stefan Staradumsky. *Ibid.*

## IV.

■ We turn now to apply the principles of *Gubernat* to this case. Preliminarily, we note that the record is deficient to make a meaningful review. In rejecting plaintiff's name change request, the trial court received no testimony from either of the parties and made no findings of fact. Additionally, the record does not contain a certification by the parties setting forth their respective reasons for or against the name change. While plaintiff has asserted reasons in her brief, we are unable to determine whether those reasons were presented to the trial court.

■ Clearly, the trial court was incorrect in finding there was "no precedent for imposing [a child-name-change] under circumstances where a name has already been given and has been used for over 2 years." In *Staradumsky, supra,* the child used his father's surname until he was three years old, at which time the court approved the change of the child's first name, middle name, and surname. 300 *N.J.Super.* at 621, 693 *A.2d* 556. Beyond that, the record in the present case does not demonstrate precisely when plaintiff began using the surname Ronan in Brendan's full

name, but it may have been prior to Brendan reaching the age of two.

Additionally, neither the trial court nor the Appellate Division addressed the presumption in favor of the primary caretaker's choice of surname. It was error for the panel to place the burden of proof upon plaintiff, the primary caretaker, to demonstrate that the name change she sought was in the best interest of Brendan. The correct analysis is that there is a presumption in favor of the primary caretaker, here plaintiff, that the surname chosen by her is in the best interests of the child. Defendant bears the burden to rebut that presumption. We emphasize that it is imperative that the trial court make clear its findings of fact in determining whether defendant met his burden to overcome the presumption that the name chosen by plaintiff was in the best interests of the child.

Lastly, we note that plaintiff did not seek to remove the surname Adely from Brendan's full name. Rather, she sought to add Ronan after the birth-given surname Adely. Before us, plaintiff expressed no opposition to the suggestion of a hyphenated surname Adely–Ronan. That approach would be consistent with the public policy expressed in the regulations issued by the New Jersey State Department of Health for resolving disagreements concerning the selection of a surname at birth. *N.J.S.A.* 8:2–1.3(a)(2) provides that where both parents have custody of the child, are both available, and disagree on the selection of a surname, "the child shall be given a hyphenated surname based on alphabetical order."

## V.

In summary, we conclude that the courts below applied the improper standard in this name change dispute. When the primary caretaker seeks to name or, as here, change the surname of a child, there is a presumption in favor of the primary caretaker that the name selected is in the best interests of the child. That presumption may be rebutted by proof offered by the secondary

caretaker that the name change is not in the best interests of the child. Because the trial court failed to apply that presumption and failed to make findings of fact, a remand is required.

## VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.