**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2480-17T2

C.S.,

     Plaintiff-Respondent,

v.

J.L.-S.[1],

     Defendant-Appellant.

_____

Submitted March 13, 2019 – Decided March 29, 2019

Before Judges Nugent and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0386-14.

Law Offices of Lawrence W. Luttrell, attorneys for appellant (John R. Voorhees III, of counsel and on the briefs).

DeTorres & DeGeorge, LLC, attorneys for respondent (Rosanne S. DeTorres, of counsel and on the brief).

PER CURIAM

_____

[1] We utilize initials to protect the confidentiality of the parties and their children.

In this post-judgment matter, defendant J.L.-S. appeals from a December 19, 2017 order, reinstating plaintiff C.S.'s parenting time pursuant to the terms of the parties' marital settlement agreement (MSA). We reverse and remand for further proceedings consistent with this opinion.

We glean the following facts from the record presented. The parties were divorced in 2014, following a fourteen-year marriage. They entered into a comprehensive MSA, which addressed, among other things, custody and parenting time of their then eleven-, nine-, and six-year-old daughters. Specifically, the parties agreed to joint legal custody and affixed a detailed parenting plan to the MSA. The document designated defendant the parent of primary residence and plaintiff the parent of alternate residence. The parenting plan afforded plaintiff one midweek ninety-minute period of parenting time and alternating weekend parenting time from Friday evening until Sunday afternoon.

For reasons the parties dispute, plaintiff's parenting time did not occur. This resulted in the entry of an order on February 1, 2016, ordering a therapist to meet with the parties and the children, and provide recommendations regarding "visitation." Pursuant to the February 2016 order, the parties enrolled with a therapist to facilitate therapeutic visitation between the children and plaintiff. In May 2016, the counselor wrote to the motion judge advising the

children were uncomfortable having parenting time with plaintiff and attempts to work with the parties directly on co-parenting had failed. The therapist recommended future parenting time occur in a therapeutic setting, a bonding evaluation, individual therapy for the children, parenting classes for plaintiff, and individual therapy for defendant.

On June 30, 2016, the motion judge entered an order which noted he had "read the written submissions of the parties, . . . heard oral argument on June 3, 2016, and . . . reviewed the [therapist's] report[.]" The order suspended plaintiff's parenting time, ordered the parties to comply with the therapist's recommendations, and ordered visitation take place in a therapeutic setting. The order specifically stated: "Any further request for modification of this [o]rder or enforcement of the [MSA] shall be made by application of the party seeking further relief."

On September 14, 2016, the motion judge signed an order appointing a therapist to provide therapeutic services for plaintiff and the children pursuant to the June 2016 order. On October 7, 2016, the judge signed an order permitting the parties' eldest daughter to continue treating with her own separate therapist, who she had previously treated with. On October 15, 2016, the court-appointed therapist wrote to the judge recommending the therapeutic visitation be

suspended pending a best interest evaluation by a forensic psychologist. On October 21, 2016, the motion judge signed an order suspending therapeutic visitation and appointing a forensic psychologist.

On February 7, 2017, the motion judge signed another order, which in pertinent part, mandated the parties make and attend their appointments with the forensic psychologist, and required the therapeutic providers to communicate and cooperate with the psychologist in the evaluation process. It also required the psychologist to report to the court regarding whether therapeutic visitation should occur between plaintiff and the two younger children and the feasibility of parenting time with the eldest child with the aid of therapist.

The forensic psychologist issued a report in March 2017 regarding the issue of therapeutic visitation. He recommended plaintiff have anger management therapy, the entire family engage in therapy, and for contact between plaintiff and the children to abide by the recommendations of the family therapist.

In August 2017, the psychologist issued a best interest evaluation report. This report recommended the continuation of joint legal custody and maintaining defendant as the parent of primary residence. The report also reiterated the recommendations in the March 2017 report regarding therapeutic

visitation, but recommended plaintiff have psychotherapy, rather than merely anger management, and defendant participate in psychotherapy and a psychiatric evaluation. The purpose of the psychiatric evaluation was to determine the proper dosage of medicine for defendant to treat her panic attacks and general anxiety disorder.

In response to the best interest evaluation, the motion judge issued an order on October 30, 2017, following a telephone conference with counsel, implementing the evaluation recommendations. On October 31, 2017, the psychologist sent the judge a letter, which he noted was "a follow-up to the phone conversation [they] had [on] . . . October 30, 2017." The record is unclear whether counsel participated in the conference call between the judge and the psychologist. Regardless, the purpose of the October 31 letter was to address the appointment of a family therapist and to opine whether the psychologist would recommend parenting time between plaintiff and the middle child. As to the latter issue, the psychologist recommended plaintiff visit with the child for two and one-half hours every Saturday and Sunday for lunch.

On November 2, 2017, the motion judge entered an order for interim parenting time in accordance with the psychologist's recommendation. The judge noted the order was opposed. In pertinent part, the preamble to the order

stated: "[The] [c]ourt . . . read the written objections of defense counsel by letter dated November 2, 2017, and [found] that based upon the record those objections are without merit and based upon a misinterpretation of [the forensic psychologist]'s letter[.]"

Pursuant to the best interest evaluation, the parties commenced family therapy. Following her initial meeting with the parties, the therapist wrote to the motion judge on December 11, 2017, and stated:

> It is clear to me that [defendant] is in need of a psychiatric evaluation, medication monitoring and individual therapy[] once a week for her anxiety and depression. [Plaintiff] should remain in individual therapy to help him reduce the stress levels that he has been feeling in his life as a result of his divorce and to increase his understanding in being empathetic to his three, minor, female children. The two parties will receive individual therapy with this writer as a means to assist them in parental concerns and needs on a monthly basis.
>
> This being said, I would have difficulty addressing concerns between the three minor children and their parents if both parents are not a functioning part of their lives. It is my recommendation that the two parties share joint legal custody of the three minor children and remain in family therapy for at least the next six months to address any and all concerns as they happen.

A dispute arose regarding whether the family therapist could also provide individual therapy. This prompted a conference call between counsel and the

A-2480-17T2

motion judge. Plaintiff's counsel argued the family therapist could not also provide individual therapy and also addressed the therapist's December 11, 2017 letter. Counsel argued the judge should reinstate parenting time due to "the drama and the dynamics between . . . both parents and the children, when the children don't see their parent except on Saturday for three hours[.]"

Defendant's counsel argued the issue of individual therapy had been addressed because the family therapist had clarified she could not provide both family and individual therapy. Regarding plaintiff's request to reinstate parenting time, counsel noted the family therapist

> did not recommend that parenting time be reinstated . . . if she wanted to say that, she certainly would have put that in her letter. All she recommends is that the joint legal custody continue and that the parties remain in family talk therapy for at least six months. . . .
>
> So if [plaintiff's] counsel wants to go ahead and make further recommendations or [seek] a reinstatement [of parenting time], then I suggest that she file a motion[.]

In response, plaintiff's counsel conceded the family therapist had not stated parenting time should be reinstated, but that counsel and her client had interpreted the December 11, 2017 letter accordingly.

The motion judge asked counsel to forward the therapist's letter for his review and stated "unless you have an objection, I'll call [the therapist] on my

7

own and see what she's saying and try and schedule a four-way." After the judge's suggestion, the following colloquy took place:

> [PLAINTIFF'S COUNSEL]: [J]udge, [the therapist] just emailed us. . . .
>
> [THE COURT]: [O]kay.
>
> [PLAINTIFF'S COUNSEL]: . . . I can forward it to you . . . [i]t's one sentence,
>
> "I would have to recommend that the couple revert back to whatever prior arrangement they had agreed upon at the time of their divorce." That is what she says.
>
> [THE COURT]: Okay. All right. So send that.

Plaintiff's counsel then offered to forward a proposed form of order for parenting time for the judge and defendant's consideration. The judge indicated he would then "schedule something[.] . . . And we'll try to figure something out so we can break this logjam with the assistance of an expert."

The record before us does not include the email from the therapist that plaintiff's counsel offered to send the judge. However, the therapist sent the judge a letter on December 14, 2017. Notably, the letter did not expressly state parenting time should be reinstated and did not suggest a specific parenting time schedule, but rather, addressed "some questions regarding 'joint custody[.]'" Specifically, the therapist advised the court that defendant had "allowed the

A-2480-17T2

children to make the decision to visit or not visit their father[.] . . . This has allowed the children to have the power, which they have used at their discretion and there is now a need to put the power back in the parents' control." The therapist recommended the judge place a structure "in place to help with the adjustment process for each minor child. . . . This cannot be done if [plaintiff] is not permitted to see the children as was initially scheduled in the divorce agreement."

Following the judge's receipt of this letter, he entered the December 19, 2017 order challenged in this appeal. Paragraph three of the order stated as follows: "Based on the recommendation of [the therapist], [p]laintiff's parenting time under the terms of the parties['] . . . [MSA] is hereby reinstated to the parties shared [j]oint [l]egal [c]ustody with slight modifications to reduce future conflict and occasioned by the distance between the parties' respective residences." The order attached the therapist's December 11, 2017 letter, which according to its preamble, the judge had considered in addition to having conducted a telephone conference with counsel.[2]

_____

[2] The record does not reflect that the judge scheduled another proceeding following the December 14, 2017 conference, as he had indicated. Therefore, we assume the December 19, 2017 order's mention of a telephonic conference referenced the December 14, 2017 event.

## I.

> We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J 474, 484 (1974)). "[W]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). We also recognize the Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion. Cesare, 154 N.J. at 413. Thus, if we conclude there is satisfactory evidentiary support for the Family Part judge's findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)).
>
> [M.G. v. S.M., 457 N.J. Super. 286, 293 (App. Div. 2018) (second alteration in original).]

Defendant argues the December 19, 2017 order was erroneous because it was entered over her objections without a plenary hearing or opportunity to be heard. She also argues the record lacked evidence to support the reinstatement of parenting time. We agree.

It is fundamental that "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of

right[.]"  R. 1:7-4(a); Curtis v. Finneran, 83 N.J. 563, 569-70 (1980); see also

Ronan v. Adely, 182 N.J. 103, 110-11 (2004) (finding the record in a child name

change dispute "deficient to make a meaningful review" because "the trial court

received no testimony from either of the parties and made no findings of fact.

Additionally, the record [did] not contain a certification by the parties setting

forth their respective reasons for or against the name change.")

> In custody cases, it is well settled that the court's primary consideration is the best interests of the children.  Kinsella v. Kinsella, 150 N.J. 276, 317 (1997).  The court must focus on the "safety, happiness, physical, mental and moral welfare" of the children. Fantony v. Fantony, 21 N.J. 525, 536 (1956).  See also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) ("In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'") (internal quotation marks omitted and alteration in original) (quoting Giangeruso v. Giangeruso, 310 N.J. Super. 476, 479 (Ch. Div. 1997)).  Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c).  V.C. v. M.J.B., 163 N.J. 200, 227-28.

> A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children.  Borys v. Borys, 76 N.J. 103, 115-16 (1978); Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App. Div. 1958).  A plenary hearing is required when the submissions show there is a genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute.

11

Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976); see Lepis v. Lepis, 83 N.J. 139, 159 (1980) (holding "a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary," and noting that "[w]ithout such a standard, courts would be obligated to hold hearings on every modification application"). See also R. 5:8-6 (requiring the court to "set a hearing date" if it "finds that the custody of children is a genuine and substantial issue").

In some cases, there is clearly a need for an evidentiary hearing to resolve custody or parenting time issues. See, e.g., P.T., 325 N.J. Super. at 215, 222 (evidentiary hearing required prior to entry of order of joint custody and unsupervised visitation with father who had been accused of sexually abusing the child); Mackowski v. Mackowski, 317 N.J. Super. 8 (App. Div. 1998) (holding that father's motion to transfer custody of sixteen-year-old daughter, who repeatedly expressed preference to live with father, should not have been decided without a plenary hearing); Fusco v. Fusco, 186 N.J. Super. 321 (App. Div. 1982) (holding that plenary hearing was necessary to determine nature and extent of visitation to be granted to father who was serving a thirty-two-year prison term for first-degree murder). See also Dorfman v. Dorfman, 315 N.J. Super. 511, 518 (App. Div. 1998) (noting that detailed and documented evidence demonstrating that "child was experiencing significant behavioral problems" warranted court intervention "to at least order an investigation of the problem"). In many cases, however, where the need for a plenary hearing is not so obvious, the threshold issue is whether the movant has made a prima facie showing that a plenary hearing is necessary.

12

[Hand v. Hand, 391 N.J. Super. 102, 105-06 (App. Div. 2007) (second alteration in original).]

We appreciate the motion judge's efforts to actively manage a difficult custody dispute without the necessity of successive, and undoubtedly costly, motion practice. However, the de jure suspension of plaintiff's parenting time for excess of a year, and de facto for a greater period, constituted a changed circumstance requiring the motion judge to make findings and explain the reasons for reverting to the MSA's parenting time schedule. Even if the judge believed he was enforcing the MSA pursuant to Rule 1:10-3 and 5:3-7(a), because he accepted the argument by plaintiff's counsel and the therapist's insinuation that defendant's conduct had hampered parenting time, defendant had a right to be heard and the judge owed the parties an explanation of his decision. Without insight into the judge's thought process, we are unable to conclude there is sufficient evidence in the record to support the December 19, 2017 order.

For these reasons, we reverse and remand the matter for the judge to render findings of fact and conclusions of law. The judge shall provide both parties the opportunity to be heard through certification and then determine whether a plenary hearing is necessary before adjudicating the custody and parenting time issues in dispute.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2480-17T2