**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1425-22

K.P.,[1]

    Plaintiff-Respondent,

v.

N.G.,

    Defendant-Appellant.

_____

Argued March 6, 2024 – Decided March 14, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2963-12.

Ashley Vallillo Manzi argued the cause for appellant (Manzi Epstein Lomurro & DeCataldo, LLC, attorneys; Ashley Vallillo Manzi, of counsel and on the briefs; Nikki T. Caruso, on the briefs).

K.P., respondent, argued the cause pro se.

---

[1] We use initials and a pseudonym in order to protect the privacy of the parties and their child. R. 1:38-3(d)(13).

PER CURIAM

In this post-judgment matrimonial matter, defendant N.G. appeals from a November 29, 2022 Family Part order adopting the report and recommendations of the guardian ad litem (GAL) appointed by the judge on behalf of the parties' then ten-year-old son "Eric" without eliciting testimony or conducting a plenary hearing. The GAL's report and recommendations were at odds with the Bergen Family Center (BFC) evaluation ordered by the judge. The order under review modified the parties' joint legal custody status by granting plaintiff K.P. sole decision-making authority with regard to Eric's medical care and extra-curricular activities and the Christmas holiday each year.

On appeal, defendant argues the judge erred by adopting the GAL's report and recommendations without conducting a plenary hearing because genuine disputes of material fact exist. Defendant also contends the judge erred by failing to identify the specific factors set forth in N.J.S.A. 9:2-4(c)—the best interests standard—when modifying legal custody of Eric and the Christmas holiday parenting time and failed to find a change in circumstances in contravention of Rule 1:7-4(a). We agree with defendant's contentions that a plenary hearing is necessary, and therefore, reverse and remand this application to the Family Part for a plenary hearing.

I.

The parties were married in 2011.  Eric was born in May 2012.  A month later, plaintiff obtained a final restraining order (FRO) pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, against defendant.  An amended judgment of divorce incorporated the parties' property settlement agreement (PSA), which was entered on June 28, 2013.  The PSA states that the parties shall have joint legal custody of Eric.

Article III, paragraph 3.3 provides:  "The parties understand and define major decisions as all decisions of significance regarding the education, health, and welfare of the child.  The parties shall have the obligation to confer regarding such decisions."  Article IV, paragraph 4.6 states:  "The parties shall confer, and mutual agreement shall be reached, with regard to any major decisions in the child's life."  Regarding holiday parenting time, Article IV, paragraph 4.1 states: "[Defendant] shall exercise parenting time on Christmas Day . . . every year."

On August 10, 2018, the parties entered a consent order modifying the parenting time schedule in the PSA, which provided in relevant part:

> 1. [Defendant] shall begin unsupervised parenting time beginning August 4, 2018, every other weekend from Saturday at 9:00 [a.m.] until 6:00 [p.m.] and Sunday from 9:00 [a.m.] until 6:00 [p.m.]  The party concluding

parenting time shall drop off the child at the other party's residence. Therefore, [plaintiff] will drop off Eric at 9:00 [a.m.] and [defendant] shall drop off Eric at 6:00 [p.m.]

2. Beginning on September 22, 2018, eight weeks after the supervision provision is lifted, and same occurs without incident, [defendant] would exercise parenting time every other Saturday from 9:00 [a.m.] until Sunday at 6:00 [p.m.]

. . . .

5. After three consecutive months of unsupervised overnight parenting time (September 22-December 22), so long as [Eric] is responding well to the change in schedule, [defendant] shall be able to exercise two separate vacations with [Eric] lasting no more than four nights. The vacations should be attached to [defendant's] parenting time weekends. Commencing in June of 2019, [defendant] can exercise two non-consecutive weeks of vacation with [Eric] each year.

. . . .

8. The holiday schedule contained on page 13 of the parties' PSA will begin immediately with the above referenced limitations on overnight parenting time. Specifically, for 2018, [defendant] shall have parenting time on Thanksgiving Day (10:00 [a.m.] through 6:00 [p.m.]) and Christmas Day (10:00 [a.m.] through 6:00 [p.m.]).

The record shows defendant's parenting time was not modified or suspended from the entry of the consent order through June 18, 2021, when plaintiff filed an emergent order to show cause (OTSC) after defendant relocated

4

to Knoxville, Tennessee. In her OTSC, plaintiff sought to: (1) suspend defendant's unsupervised parenting time; (2) suspend his overnight parenting time; (3) allow her to monitor all phone calls between defendant and Eric; (4) compel defendant to undergo a psychiatric evaluation; and (5) require a best interests evaluation be performed to determine if defendant was allowed unsupervised parenting time. Plaintiff claimed the relief she sought was based on defendant's anger issues raised by Eric's therapist. Plaintiff did not seek to modify the parties' joint custody status, or the Christmas holiday parenting time schedule set forth in the PSA, or the terms of the consent order.

On June 22, 2021, the judge conducted oral argument on plaintiff's OTSC. Two days later, the judge entered an order granting plaintiff's request for supervised parenting time between defendant and Eric; appointed BFC to perform a custody and parenting time evaluation; denied plaintiff's request to have defendant undergo a psychiatric evaluation; and granted plaintiff's request to monitor phone calls between defendant and Eric.

On December 31, 2021, BFC issued its custody and parenting time evaluation and recommendations to the judge. The evaluator recommended:

> Both parents should share joint legal custody. The history of this case suggests that [defendant] has not been provided consistent access to information regarding [Eric] and has not been consistently included

A-1425-22

in parenting decisions. This is a serious concern and potentially serious risk to the father-son relationship and needs to be addressed immediately . . . . It is [plaintiff's] responsibility to immediately communicate to [defendant] any health issues requiring hospital treatment, any school issues which could potentially impact on [Eric's] academic progress and any other issues that impact significant on [Eric].

The evaluator also recommended that plaintiff have parenting time for Jewish holidays, defendant have parenting time on Christmas Eve and Christmas Day, and follow the universal holiday parenting time schedule and specific holidays pertaining to the religious and cultural beliefs of each parent. Plaintiff is Jewish, and defendant is Greek Orthodox.

On March 3, 2022, the parties appeared for a case management conference. The judge issued an order that day appointing a GAL and a parent coordinator (PC).[2] The judge allowed plaintiff to retain an independent custody and parenting time expert, ordered defendant to have unsupervised parenting time with Eric one weekend per month from Saturday at 9:00 a.m. to Sunday at 6:00 p.m. on a date agreed upon by the parties, and ordered defendant have unsupervised phone calls with Eric until further order of the court. On October 15, 2022, the judge ordered, by consent, that effective October 15, 2022,

---

[2] At oral argument, we were informed there were two PCs appointed in this matter and both have been discharged.

defendant have overnight parenting time with Eric every other weekend from Saturday at 9:00 a.m. until Sunday at 6:00 p.m.

On November 21, 2022, the GAL issued her report and made the following recommendation: "The decision-making authority with regard to [Eric's] medical care, extracurricular activities and his travel schedule [should] rest solely with [plaintiff]." With respect to holiday parenting time, the GAL recommended that defendant have parenting time every other year on Christmas starting on Christmas Eve at 9:00 p.m. to Christmas Day at 8:00 p.m.

On November 29, 2022, the parties and the GAL appeared at a follow-up case management conference. The judge requested that the GAL place her recommendations on the record along with her reasoning. The GAL then stated:

> "The parent of primary residence is [plaintiff]. She has been for many years, for [Eric's] entire life essentially. And she has been involved in the day-to-day decision making. So based upon the fact that [Eric] has turned out to be a wonderful young boy; he is raised well. He is thriving in her care. Based upon the decision[-]making that she is engaged in, I believe that decision [-]making should be transferred to [plaintiff]."

The GAL's statement on the record contradicted the recommendations in her written report.

The judge then permitted the parties to place their arguments on the record regarding the GAL's recommendations. However, neither party was allowed to

7

elicit testimony from the GAL, cross-examine her, present any witnesses, or present evidence. Defendant's counsel stated on the record that defendant "does not agree to accept or adopt all of [the GAL's] recommendations. He is open to some of them." Defendant's counsel added that the GAL did not reference the BFC's recommendations in her report, and further noted that the GAL's recommendations placed on the record reached "different conclusions" and contradicted her report because the GAL's report only referenced decision-making with respect to medical, travel, and extracurricular activities, but on the record, the GAL expanded her recommendation to include "all the day-to-day decisions would be with [plaintiff]." According to defendant's counsel, the judge ignored the provisions set forth in her March 15, 2022 order, which set forth that the GAL would be subject to cross-examination at the "pending custody hearing," which never occurred.

In relevant part, the judge's memorializing November 29, 2022 order provided: Eric shall recommence therapy; defendant shall have parenting time every other weekend on Friday nights at 6:00 p.m. and ending on Sunday at 7:00 p.m.; the parties shall alternate the Christmas holiday (December 24 at 9:00 p.m. to December 25 at 8:00 p.m.) each year; plaintiff shall have sole decision-making authority with regard to Eric's medical care and extra-curricular

activities; and the GAL was relieved from her appointment under Rule 5:8B(c).[3]
This appeal followed.

## II.

We consider whether defendant is entitled to a plenary hearing. Defendant seeks a plenary hearing in order to challenge the report and recommendations of the GAL and contends there are genuine disputes of material fact regarding custody and parenting time between the BFC's and the GAL's recommendations. Defendant also asserts the judge modified custody without specifying the N.J.S.A. 9:2-4(c) factors, did not find a change in circumstances to warrant modifications of the parties' joint legal custody agreements set forth in the PSA, and did not provide findings of fact and conclusions of law as required by Rule 1:7-4(a). Although we apply an abuse of discretion standard to a trial court's determination regarding the need for a plenary hearing, Costa v. Costa, 440 N.J.

---

[3] Rule 5:8B(c) provides:

> The term of the guardian ad litem shall be coextensive with the application pending before the court and shall end on the entry of a judgment of divorce, dissolution of a civil union or termination of a domestic partnership or an order terminating the application for which the appointment was made, unless continued by the court. The guardian ad litem shall have no obligation to file a notice of appeal from a judgment or order nor to participate in an appeal filed by a party.

Super. 1, 4 (App. Div. 2015), we conclude the judge was mistaken by not conducting a plenary hearing.

Turning to defendant's substantive challenges to the November 29 order, it is axiomatic that the best interests of the child is the fundamental legal principle guiding our review. D.A. v. R.C., 438 N.J. Super. 431, 450 (App. Div. 2014) (citing Kinsella v. Kinsella, 150 N.J. 276, 317-18 (1997)). "A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017).

"A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the child[]." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "Absent exigent circumstances, changes in custody should not be ordered without a full plenary hearing." Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009) (citing R. 5:8-6; Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005)).

It is equally well-established that "[w]e grant substantial deference to a trial court's findings of fact and conclusions of law, which will only be disturbed

10                                                                    A-1425-22

if they are manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (quoting Crespo v. Crespo, 395 N.J. Super. 190, 193-94 (App. Div. 2007)). This is particularly so where the evidence is largely testimonial and rests on the judge's credibility determinations. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

In addition, we particularly "recogniz[e] the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] more exacting standard governs our review of the trial court's legal conclusions[,] . . . [which] we review . . . de novo." Id. at 283 (citing D.W. v. R.W., 212 N.J. 232, 245-46 (2012)).

This record reflects disputed recommendations from the BFC and the GAL, and conflicting recommendations from the GAL, such that the parties should have been given a brief period for discovery after the GAL issued her report and, absent an agreement, the opportunity to present the issues for the judge's resolution at a plenary hearing as to what was in Eric's best interest. Conforti v. Guliadis, 128 N.J. 318, 322 (1992) (quoting Conforti v. Guliadis, 245 N.J. Super. 561, 565 (App. Div. 1991)). In such a proceeding, the judge

11

will have the chance to assess the credibility of the parties' assertions, as tested through the rigors of cross-examination. <u>Eaton v. Graw</u>, 368 N.J. Super. 215, 222 (App. Div. 2004).

Moreover, the judge did not consider the N.J.S.A. 9:2-4(c) factors to determine whether any modification to the PSA and subsequent consent order was in Eric's best interest:

> In making an award of custody, the court shall consider but not be limited to the following factors: (1) the parents' ability to agree, communicate and cooperate in matters relating to the child; (2) the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; (3) the interaction and relationship of the child with its parents and siblings; (4) the history of domestic violence, if any; (5) the safety of the child and the safety of either parent from physical abuse by the other parent; (6) the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; (7) the needs of the child; (8) the stability of the home environment offered; (9) the quality and continuity of the child's education; (10) the fitness of the parents; (11) the geographical proximity of the parents' homes; (12) the extent and quality of the time spent with the child prior to or subsequent to the separation; (13) the parents' employment responsibilities; and (14) the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.
>
> [N.J.S.A. 9:2-4(c).]

Indeed, it is well established a best interests analysis under N.J.S.A 9:2-4 "requires the court to consider any and all material evidence[,]" Kinsella, 150 N.J. at 317, and "must be based on all circumstances, on everything that actually has occurred, on everything that is relevant to the child's best interests[,]" In re Baby M., 109 N.J. 396, 456 (1988) (emphasis added).

The judge did not elicit testimony from the parties, the BFC evaluator, or any fact or expert witnesses. And, the GAL merely gave a statement on the record. The GAL did not testify and was not subject to direct or cross-examination. In short, the judge rendered a decision by simply adopting the GAL's report and contradictory statement on the record without conducting a plenary hearing or conducting the requisite best interest analysis.

The judge's reliance on the GAL's report and statement on the record, where the court heard no factual or expert testimony at all, was legal error. The judge relied on the GAL's report and statement to grant relief that went over and above what plaintiff sought in her OTSC, i.e., changed joint legal custody to sole legal custody and modified Christmas holiday parenting time, without according defendant any opportunity to challenge or rebut the GAL's recommendations.

Our review of this matter is further complicated by the judge's failure to render a statement of reasons, as required under Rule 1:7-4(a), explaining the basis for her order. See Pressler and Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2024) (emphasizing that the Rule requires findings to be made on all motions decided by written orders appealable as of right, and "the critical importance of that function"); see also Ronan v. Adely, 182 N.J. 103, 110 (2004). On remand, the judge shall make adequate factual findings and provide a statement of reasons following the plenary hearing.

We remand to the Family Part to conduct a plenary hearing on the issues raised in plaintiff's OTSC and opposition filed by defendant on custody and parenting time issues that serve Eric's best interests. As we cautioned in P.T. v. M.S., courts should not "allow experts (or a GAL) to shoulder excess responsibility or authority, nor trial judges to cede their responsibility or authority[,]" and that the court "must not abdicate its decision-making role to an expert (or GAL)." 325 N.J. Super. 193, 216 (App. Div. 1999).

We stress that following the plenary hearing on remand, it is solely the judge's province to decide what the appropriate custody and parenting time parameters and schedule should be and how and when it should be implemented,

after giving due consideration to any expert, BFC and GAL opinions, and other evidence adduced at the plenary hearing.

III.

Lastly, we address plaintiff's request for counsel fees in her self-authored brief. Plaintiff states, "Due to years of [a]busive [l]litigation at the hand of [d]efendant, [she] requests that [this] [c]ourt revise the order dated November 29 . . . to include a ruling and order [d]efendant to pay all legal fees associated with this proceeding[,] which began on June 24, 2021[,] and ended on November 29, . . . which totals $41,285.81." We reject plaintiff's request because: the issue was not considered by the Family Part judge,[4] plaintiff did not include her request for counsel fees in a point heading in her brief,[5] and she never filed a

---

[4]  It is well settled that the Appellate Division will not consider questions or issues not raised at the trial level unless the questions raised pertain to the trial court's jurisdiction or concern a matter of great public interest.  State v. Robinson, 200 N.J. 1, 20-22 (2009).

[5]  We also limit our consideration "of the issues to those arguments properly made under appropriate point headings" and do not address "oblique hints and assertions" that are untethered to the point headings required under Rule 2:6-2(a)(6). Almog v. Isr. Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997); see also Mid-Atl. Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011) (refusing to address an issue raised in a two-sentence paragraph in a brief "without a separate point heading, in violation of Rule 2:6-2(a)[(6)]"). It is not our role to weave together the fabric of an argument on a party's behalf based on threads vaguely scattered amongst the

15

notice of cross-appeal.[6]  Therefore, we do not consider plaintiff's request for counsel fees.

In summary, we reverse the November 29, 2022 order in its entirety and remand all issues raised in plaintiff's OTSC and any opposition and pleadings filed in response by defendant to the Family Part for consideration and determination following a plenary hearing.  We leave the conduct of the plenary hearing to the judge's sound discretion.  We express no opinion about the outcome of the plenary hearing.

We conclude the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

arguments that are not properly identified in point headings in accordance with Rule 2:6-2(a)(6).

[6]  Rule 2:5-6(b) provides "Applications for leave to cross appeal from interlocutory orders and administrative decisions or actions as to which leave to appeal has not already been granted shall be made by serving and filing with the appellate court a notice of motion within [twenty] days after the date of service of the court order or administrative decision appealed from or after notice of the agency or officer's action taken or, if no cross-motion is filed, within [twenty] days following decision of a motion for reconsideration as provided by [Rule] 2:5-6(a)."

A-1425-22