**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3857-23

LUIS A. RODRIGUEZ-OCASIO,
on behalf of himself and those
similarly situated,

    Plaintiff-Respondent,

v.

I.C. SYSTEM, INC.,

    Defendant-Appellant.

_____

> Argued September 30, 2025 – Decided November 12, 2025
>
> Before Judges Susswein and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2761-22.
>
> Monica M. Littman argued the cause for appellant (Kaufman Dolowich, LLP, attorneys; Monica M. Littman and Richard J. Perr, on the briefs).
>
> Yongmoon Kim argued the cause for respondent (Kim Law Firm LLC, attorneys; Philip D. Stern and Yongmoon Kim, on the brief).

PER CURIAM

In this class action appeal, defendant I.C. System, Inc, a debt collection agency, appeals from a June 25, 2024 order granting class certification, establishing two subclasses based on the version of the collections letter a party received, and appointing plaintiff Luis A. Rodriquez-Ocasio as class representative. Although the court detailed its reasoning for granting class certification, it did not adequately articulate its rationale for the appointment of plaintiff as class representative of both subclasses. Therefore, we affirm the part of the order granting class certification. We remand in part for the court to make findings on whether plaintiff is able to fairly and adequately represent the interests of both subclasses.

I.

The pertinent facts are not disputed. In 2017, plaintiff sought pet services from Banfield Pet Hospital (Banfield) and signed a payment agreement for those services. The agreement contained a provision for collection costs in the event of nonpayment, stating:

> Whether or not a legal action is commenced, Member agrees to pay and reimburse Provider for any and all fees and costs of any collection agency, which may be based on a percentage of the debt (up to the maximum percentage of 33%), and all fees, costs, and expenses, including reasonable attorney's fees, incurred by Provider in such collection efforts.

2

Plaintiff incurred a debt to Banfield. When plaintiff failed to pay, the matter was transmitted to defendant for collection. In June 2018, defendant sent plaintiff a collection letter regarding the delinquent account. The letter set forth the following amounts and balance due:

| | |
|---|---|
| Principal Due: | $593.45 |
| Collection Charge Due: | $103.85 |
| BALANCE DUE: | $697.30 |

In August 2022, plaintiff filed a single-count putative class action complaint alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. §§ 1692 to 1692p. Plaintiff alleged defendant's June 2018 collection letter violated the FDCPA by seeking improper collection fees. Plaintiff brought the action individually and on behalf of others similarly situated whose alleged creditor was Banfield. After the close of discovery, plaintiff moved for class certification, seeking a single class composed of any New Jersey resident to whom defendant sent a Banfield collection letter between June 5, 2018 through May 11, 2021.

Defendant sent collection letters to approximately 11,000 New Jersey residents. There were three versions of the collection letter, corresponding to the version of the Banfield customer agreement signed by each individual, dated: (1) July 2014; (2) October 2014; and (3) October 2017. In each version,

3

defendant included language regarding collection costs it purportedly incurred. Plaintiff alleged this provision in the agreement, which was also in the collection letter, improperly included collection costs that were not yet incurred.

The July 2014 version contained the following collection costs provision:

> Collection Costs: Whether or not legal action is commenced, Member agrees to pay and reimburse Provider for any and all fees and costs of any collection agency, which may be based on a percentage of the debt (up to the maximum percentage of 33%), and all fees, costs, and expenses, including reasonable attorneys' fees, incurred by Provider in such collection efforts.

In October 2014, Banfield revised its letter and the collection costs provision stated:

> Collection Costs: Whether or not a legal action is commenced, Member agrees to pay and reimburse Provider for any and all fees and costs of any collection agency, which may be based on a percentage of the debt (up to the maximum percentage of 33%), and all fees, costs, and expenses, including reasonable attorney's fees, incurred by Provider in such collection efforts, <u>in each case such amounts may be added to the debt owing when the account is placed into collections.</u>

> [emphasis added].

In October 2017, Banfield again revised the collection costs provision, now stating:

> Collection Costs: Whether or not legal action is commenced, Member agrees to pay and reimburse

4

Provider for any and all fees and costs of any collection agency, which may be based on a percentage of the debt (up to the maximum percentage of 33%), and all fees, costs, and expenses, including reasonable attorney's fees, incurred by Provider in such collection efforts.

The July 2014 and October 2017 collection costs provisions were identical; the October 2014 provision differed by inclusion of the phrase, "in each case such amounts may be added to the debt owing when the account is placed into collections." Plaintiff received the October 2017 version of the provision.

After hearing oral argument on plaintiff's motion, the court granted class certification as memorialized in the June 25, 2024 order. The court found it appropriate to divide the class into two subclasses based on the "two distinct [']Collection Costs['] provisions in the Banfield contracts." Because the court found the July 2014 and October 2017 provisions identical, it did not find it necessary to include a third subclass. The court also appointed plaintiff as class representative.

On appeal, defendant contends reversal of class certification is warranted on two grounds, alleging the trial court erred by: (1) appointing plaintiff as the class representative of the subclass of persons subject to the October 2014 version of the Banfield contract because plaintiff is not a member of that class; and (2) certifying the classes given the undisputed evidence that there is no

A-3857-23

administratively feasible means to determine which collection costs provision is in any putative class member's Banfield contract.

## II.

We review a trial court's class certification determination for an abuse of discretion. Cerciello v. Salerno Duane, Inc., 473 N.J. Super. 249, 257 (App. Div. 2022) (citing Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017)). An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Borough of Englewood Cliffs v. Trautner, 478 N.J. Super. 426, 437 (App. Div. 2024) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561 (2002)).

Class actions "developed . . . as a means of consolidating numerous claims involving common issues in a single action." In re Cadillac V8 6-4 Class Action, 93 N.J. 412, 423-34 (1983). Rule 4:32-1 sets forth the standard for class certification. To obtain class status, the party seeking class certification must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties

A-3857-23

> will fairly and adequately protect the interests of the class.
>
> [Cameron v. S. Jersey Pubs, Inc., 460 N.J. Super. 156, 178 (App. Div. 2019) (quoting R. 4:32-1(a)).]

These four initial requirements are commonly referred to as: numerosity, commonality, typicality, and adequacy of representation. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 173 (2021). Additionally, "plaintiffs pursuing class certification must also satisfy one of the three requirements of subsection (b)" of Rule 4:32-1. Ibid.

### A.

In this case, the trial court found that the case satisfied these four requirements and granted class certification pursuant to Rule 4:32-1(a) and (b). The court noted that plaintiff and each class member received essentially the same form collection letter and that defendant's alleged violations of the FDCPA constituted "action[s] generally applicable to the class."

The court nonetheless deemed it appropriate to divide the class into two subclasses based on the two distinct "Collection Costs" provisions in the Banfield contracts. It reasoned this subdivision was warranted because "the [c]ourt will likely be required to engage in an interpretation analysis of the [']Collection Costs['] provisions to determine whether [defendant] was entitled

to seek fees prior to incurring those fees." Although the court found two distinct categories based on the language of the July 2014/October 2017 Banfield agreements and the October 2014 agreement, the court appointed plaintiff as class representative for the entire class.

As a prerequisite to a class action, Rule 4:32-1(a) requires that one or more members of the class become the representative party only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

In certain circumstances, "a class may . . . be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." R. 4:32-2(d). "The rule makes clear, as had been the practice, that a class may be divided and, if so, that these rules apply to each [class]." Pressler & Verniero, Current N.J. Court Rules, History and Analysis of Rule Amendments to R. 4:32-2(d), note 3.5, www.gannlaw.com (2026) (citing Right to Choose v. Byrne, 165 N.J. Super. 443 (Ch. Div. 1978), certifying two discrete plaintiff classes).

A-3857-23

Generally, a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 343 (2010) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). A class representative must "be able to 'fairly and adequately protect the interests of the class[,]' as required by Rule 4:32-1(a)(4)." Laufer v. U.S. Life Ins. Co. in City of New York, 385 N.J. Super. 172, 181 (App. Div. 2006). This requirement is "closely related to the requirement of typicality." Id. at 182. "To satisfy this requirement, 'the plaintiff must not have interests antagonistic to those of the class.'" Ibid. (citing Delgozzo v. Kenny, 266 N.J. Super. 169, 188 (App. Div. 1993). However, those interests need not be identical. Id. (citing Moore's Federal Practice § 23.25[4][b][i]. "[T]he named representative only needs to be adequate[.]" Ibid.

In the present case, the trial court found that "plaintiff and the proposed class share[d] the common fact[] that [defendant] mailed each of them [a] collection letter[] to collect on [the Banfield debt,] allegedly misstating the [']Collection Charge Due.[']" The court determined there was a common question of law central to the case; namely, "whether [defendant's] practice of adding collection charges before they [are] incurred" violates the FDCPA. As for the typicality requirement, the trial court found that plaintiff and the

9

proposed class's claims "arise out of the same events" where defendant "mailed standardized letters" seeking to "collect a collection charge before it was due in violation of the FDCPA."

Plaintiff contends that the trial court's findings demonstrate that his interests are not adverse to those of the class members and therefore, he is capable of representing the entire class. Said differently, all class members, including plaintiff, share a common question of law regardless of which version of the Banfield agreement governs. Defendant counters that because plaintiff's contract did not include the October 2014 version of the collection costs provision, he cannot serve as representative of the October 2014 subclass.

Although the trial court ruled that the class shared common questions of law and fact and plaintiff's claims and defenses were typical of the claims or defenses of the class, it also determined it appropriate to divide the class into two subclasses based on the differing collection costs provisions. The court reasoned that the subclasses were necessary because it "will likely be required to engage in an interpretation analysis" of these provisions. The court, however, did not further explain why a single class representative could "fairly and adequately" represent the interests of the entire class.

A-3857-23

Plaintiff further argues that the creation of subclasses was for case management purposes and not because of an inherent conflict of interest. Thus, plaintiff contends, the court did not abuse its discretion in appointing one class representative. We recognize that subclasses may be created for various reasons. Here, however, the trial court did not state that the subclasses were established for case management purposes only. Nor did the court explain why it found plaintiff fit to represent the October 2014 subclass. Our ability to fully analyze the parties' arguments on this issue is hampered by the trial court's lack of findings on this issue. Ronan v. Adely, 182 N.J. 103, 110-111 (2004).

We do not agree that the court's lack of findings as to plaintiff's appropriateness to serve as class representative warrants a reversal of class certification. We hold, rather, that a reversal and remand is necessary solely for the trial court to make findings as to whether plaintiff is fit to serve as class representative for both subclasses and to make the requisite findings and conclusions of law on this issue. We leave to the court's discretion whether to permit supplemental arguments on this limited issue, and if warranted, whether to permit the parties to propose an alternative representative for the October 2014 subclass. We take no position on these questions.

A-3857-23

B.

Defendant next contends that class certification should be reversed because there is no administratively feasible method to determine which class members are part of which subclass. Defendant asserts the trial court did not address the "administratively feasible" requirement to class certification, and because the subclasses are not readily identifiable, class certification must be reversed. We disagree.

We begin by recognizing that "[c]lass certification presupposes the existence of a properly defined class"—one that is "sufficiently identifiable without being overly broad." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 106, (2007). Here, the trial court identified the class as those persons:

> . . . to whom, from June 5, 2018, through and including May 11, 2021, [d]efendant mailed one or more letters in an attempt to collect a consumer debt on behalf of Banfield Pet Hospital, where [d]efendant added a 'Collection Charge' to the debt.

This scope is defined and not overly broad.

Plaintiff's primary argument is that it is not easy to identify which subclass a member belongs to. Banfield contends it has "no readily available information, method, and/or code that would allow it to identify which of the three [']Collection Costs['] provisions apply to any of the approx[imate] 10,985

Banfield accounts at issue." This argument is without merit for the following reasons.

There is no dispute that Banfield has access to the agreements containing the relevant provisions. Moreover, as plaintiff acknowledges, an individual review of those records would produce the information necessary to identify the subclass members. See Byrd v. Aaron's Inc., 784 F. 3d 154, 163 (3rd Cir. 2015) (holding class must be ascertainable in order to be certified). Although an individual review of those accounts and relevant documents is undoubtedly time-consuming, this fact does not invalidate class certification. Id. at 171. Furthermore, there is nothing unreasonable about conducting an independent review of accounts and records contained therein.

In sum, we discern no abuse of the court's discretion in its class certification determination. We reverse in part and remand the matter for the court to make findings as to whether plaintiff, who is not a member of the subclass of persons subject to the October 2014 version of the Banfield agreement, is fit to represent this subclass.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division